PRIMUS EMERSON, *et al.*, Appellants, *vs.* ISAAC H. STURGEON, *et al.*, Respondents.

1. *Forcible entry, etc.*—*Statute of 1845*—*Use of necessary force in entering land etc.*—Under the statute of 1845, (R. C. 1845, p. 512) the court erred in declaring to be lawful the action of one—even the owner—who entered land "peaceably *and used no more force than was necessary.*"

*Appeal from St. Louis Land Court.*

*John M. Krum,* for Appellant.

*B. A. Hill,* for Respondent.

NAPTON, Judge, delivered the opinion of the court.

This suit was begun in 1847, and after being transferred from the Circuit Court to the Court of Common Pleas, and thence to the Land Court, was finally tried in the Land Court in 1853, where plaintiff took a non-suit. The non-suit having been set aside, the case was again tried in 1855, and the result was another voluntary non-suit,—and an appeal was taken to this Court, and since then (20 years ago) the case seems to have been awaiting the result of the case of Magwire vs. Tyler.

The action was trespass, *quare clausum fregit,* and the plea was the one directed by the statute at that time, but the defense was *liberum tenementum.* which then could be proved under what may be termed the general issue. The plats originally in the record are destroyed and we have no means of ascertaining the exact location of lots 46 and 51, to which all the instructions refer. As the plaintiffs and defendants both introduced their titles under Brazeau and Labeaume, it is obvious that the gist of the controversy has been settled, and that the questions now involved have no importance except to settle the costs of this action.

The plaintiffs, it seems, were engaged in 1847 in boat building and in running a saw mill in North St. Louis, and occupied for this purpose a piece of ground described by one of the witnesses, as bounded on the west by Broadway, on the east by the river, and on the north by Webster street and on

the south by the ditch of Labeaume. This description, of course, brought the land within the Brazeau patent issued in 1862, and was within the Labeaume patent of 1852, and this trial was in 1855.

Sturgeon, one of the defendants, was an agent of Chambers, who claimed under Labeaume, and evidence was introduced to show that Sturgeon inclosed a part of this land by a fence and under permission of Emerson, and on the other hand, that this fence was put up without leave and by force, and it took a good many men, and armed men, to put it up. The testimony on this point is really the main testimony in the case, but it is useless to repeat it.

The Court gave nine instructions for the defendant. The first instruction was this: "If the jury find that Wm. Chambers owned the land in question, and that the plaintiffs or those under whom they may have claimed as tenants of Wm. Chambers or his agent, were permitted to lay logs and lumber on lots 46 and 51, fronting on Webster, Main and Second streets, for the convenience of the plaintiff's mill, without rent, said land being at the time vacant and unenclosed; and that it was agreed at the time such permission was given, that the plaintiffs or those under whom they claimed as tenants of Wm. Chambers or his agent, should give Wm. Chambers or his agent possession of the said premises whenever he required the same, and remove their logs and lumber therefrom; and if the jury further find that before the fencing of said lots the said Chambers or his agent gave notice to said Childs & Emerson that he required the possession of said premises to be delivered to him, and that he intended to fence the same, and that said Emerson & Childs, or either of them, consented thereto, and that defendants by direction of said Chambers, or his agent, entered on said premises and fenced the same, in a peaceable manner, without using any more force than was necessary for the said purpose, then the plaintiffs cannot recover any damages in this action for the said entry on said premises, and the fencing thereof and holding possession thereafter."

The Court gave eight other instructions. The plaintiff asked several which were based on the counterpart view of the law to that asserted in the first instruction.

Whatever may have been the common law in regard to entries by an owner, our statute, at the date of the entry (Rev. C. 1845, p. 512), declared that " no person shall enter upon, or into, any lands, tenements, or other possessions, and detain and hold the same, but when entry is given by law, and then only in a peaceable manner."

Section 2 says: "If any person shall enter upon or into any lands, tenements or other possessions with force or strong hand, or with weapons, etc., the person so offending shall be deemed guilty of a forcible entry and detainer."

The Court instructed the jury that, if defendants entered peaceably and used no more force than was necessary for their purposes, they could not recover.

This instruction was not in accordance with our statute, which did not authorize even an owner of land to enter upon it with force or strong hand.

The judgment must therefore be reversed, and the cause remanded. The other judges concur.