GUSTAV WAMSGANZ, Respondent, v. ELIZA J. WOLFF et al., Appellants.

St. Louis Court of Appeals, December 4, 1900.

1. **Landlord and Tenant:** EVICTION: TENANT AT SUFFER-ANCE: NOTICE. A tenant at sufferance only can be evicted without being first notified to quit.

2. ———: ———: ———: PEACEABLE POSSESSION: TORT FEASOR: STATUTORY CONSTRUCTION. But where possession of premises is gained in a peaceable manner, the tenant is not a tort-feasor, but is in the quiet enjoyment of the premises, and under section 3319, Rev. Stat. 1899, can not be lawfully dispossessed by force by anyone, even by the owner of the premises, except by legal process.

3. ———: ———: ———: ———: ———: DAMAGES. In the case at bar plaintiff's possession though wrongful was peaceable and was under the protection of the law, and he could only be rightfully disturbed by due course of law, and his damages for the forcible eviction by the owner entitled to immediate possession were only nominal.

4. **Punitive Damages, Elements of.** To entitle the plaintiff to receive punitive damages he must show that the act complained of was unlawful, and further, that it was a wanton or malicious act. In other words he must show an unlawful act coupled with an intentional wrong.

5. ———: INSTRUCTION: EVIDENCE. In the case at bar under the evidence the plaintiff was entitled to an instruction for punitive damages.

6. ———: ———: ———: TORT-FEASOR. Acquiescence in the commission of a tort after the act does not make the party thus acquiescing a party to the wrong, nor liable therefor as a joint tort-feasor; to be liable therefor, he must not only assent to the wrong, but the act must have been done for his benefit.

Wamsganz v. Wolff.

Appeal from the St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*Frank M. Estes* for appellant.

(1) The plaintiff had no title to the land; the defendant, Eliza J. Wolff had undisputed title, hence plaintiff can not maintain an action for trespass upon the land against Mrs. Wolff.     Davis v. Wood, 7 Mo. 162; Townsend v. Bissell, 5 Thomp. & C. (N. Y.) 583; 3 Hun. N. Y. 556; Muldrow v. Jones, 1 Rice (S. C.) 64.     (2) The defendant, Eliza J. Wolff, had the right to regain possession of her property, even by force, as against a trespasser.     State v. Dooley, 121 Mo. 598.     (3) The court erred in giving an instruction for exemplary damages in this case.     State v. Jungling, 116 Mo. 162; O'Brien v. Loomis, 43 Mo. App. 29; Nelson v. Wallace, 48 Mo. App. 193; Bigelow v. Railway, 48 Mo. App. 368. As to exemplary damages, the law says, "to entitle one to exemplary damages, it must be shown that the act complained of, was unlawful, and was also wanton and malicious," in other words, there must be an unlawful act coupled with an intentional wrong.   State to use v. Jungling, 116 Mo. 162; O'Brien v. Loomis, 43 Mo. App. 29; Nelson v. Wallace, 48 Mo. App. 193.

*Frederick A. Wind* for respondent.

(1) Since enactment in 1813 of what is now section 5087, Revised Statutes 1889, every entry upon land without consent of person in possession is forcible and unlawful, even when made by an owner entitled to possession.   Emerson v.

Sturgeon, 59 Mo. 404; Dilworth v. Fee, 52 Mo. 130; Sitton v. Sapp, 62 Mo. App. 197; Dustin v. Cowdry, 23 Vt. 631; Mossler v. Deaver, 106 N. C. 494. (2) For every unlawful act done wilfully, wantonly, and in total disregard of law and the rights of others, whether done with or without malice, the law gives to the injured person the right to recover punitive as well as compensatory damages. Freidenheit v. Edmundson, 36 Mo. 226; Green v. Craig, 47 Mo. 90; Buckley v. Knapp, 48 Mo. 152; Parkes v. Stackelford, 61 Mo. 68. (3) Two juries, having awarded exemplary damages, that question is no longer open to inquiry. R. S. 1889, sec. 2241.

OPINION ON MOTION FOR REHEARING.

BLAND, P. J.—The petition (stated briefly), alleges that defendant, Eliza J. Wolff, on the thirty-first day of July, 1897, was the owner of a lot of ground situated at the southeast corner of Kings Highway and West Pine Boulevard in the city of St. Louis, Missouri, of which premises plaintiff alleged he was in the peaceable possession conducting a restaurant under the name of "The Shelter," and for that purpose had on said lot a brick and frame structure, tables, chairs, tableware, table linen, cooking stoves and utensils, shelves, counters, etc., making a full equipment for the conduct of his business, and that he had on hand a supply of provisions, all belonging to himself; that the buildings were of the value of $3,000; the furniture $1,000 and the supplies on hand $200, and that he also had in the building personal wearing apparel of the value of $60. The petition further alleged that his business was profitable, and that the rental value of the premises per month, for the season ending September 30, 1897, was $1,000. He alleges that the defendants on the said thirty-first day of July, by their hired agents and employees, without process of law

and with force and arms entered upon said premises and forcibly ejected him therefrom; and thereafter retained possession forcibly and against his will; that defendants took possession of and converted all of plaintiff's personal property to their own use, including his wearing apparel. There is a prayer for actual and a special prayer for exemplary damages.

The answer of Eliza J. Wolff admitted that she is the owner of the premises, but denied all other allegations. The answer of the other defendants was a general denial. The issues were tried by a jury, who returned a verdict for plaintiff, assessing his actual damages against all of the defendants at $350, and punitive damages at $500. Motions for new trial and in arrest were duly filed by defendants, which were by the court overruled, and they appealed.

From the evidence it appears that on April 23, 1896, Eliza J. Wolff leased the lot of ground described in the petition to Hodges & Keene for a term of three years from date of lease, rents payable quarterly. The lease provided that any failure to pay each quarter's rent when due and after demand for the same had been made, should work a forfeiture of the lease. The lease also provided that the lessees should not sublet the premises without the written consent of the lessor, or her legal representatives. Hodges & Keene erected a structure on the premises, which they occupied and used as a restaurant. On the first day of May, Hodges & Keene signed, acknowledged and delivered to plaintiff the following bill of sale, which was filed for record in the recorder's office June 24, 1897, to-wit:

"Know all men by these presents, that we, Wm. S. Hodges and Geo. W. Keene composing the firm of Hodges & Keene, for and in consideration of the sum of three hundred dollars ($300) to us paid, have this day bargained and sold and by these presents do bargain and sell unto Gustav Wamsganz all

our interest in the following described property, to-wit: The improvements on a lot of ground on the southeast corner of Kings Highway and Pine streets, in which said Hodges & Keene have a leasehold estate; a soda fountain, gasoline range, gasoline stove, and the cooking utensils, dishes, glassware, knives, forks and spoons, cuspidors, mirrors, lemonade squeezers, corkscrews, syrup bottles, fruit jars, crushed fruit jars, table linen, curtains, awnings, tables and chairs, and all other personal property belonging to said firm.

"In witness whereof, we have hereunto set our hands and seals this first day of May.

"Wm. S. Hodges,   (Seal.)<br>"Geo. W. Keene.   (Seal.)"

On the same day plaintiff, Hodges & Keene, made and signed the following agreement:

"This agreement made and entered into this first day of May, 1897, by and between Wm. S. Hodges and Geo. W. Keene, composing the firm of Hodges & Keene, parties of the first part, and Gustav Wamsganz, party of the second part, witnesseth: that said parties of the first part have this day made and delivered to said party of the second part a bill of sale to certain personal property therein described being of a place known as 'The Shelter;' whereas, the parties of the first part have executed and delivered to party of the second part such bill of sale; and whereas said parties of the first part are desirous of retaining an interest in said business and whereas said party of the second part is willing to make certain advances in order to obtain an interest in said business. Now, therefore in consideration of the premises hereinafter set forth, it is mutually agreed, first, that the said Gustav Wamsganz will be placed in absolute possession of the said premises at once; second, that the said Gus Wamsganz will pay Frederick A. Wind three

hundred dollars, upon delivery to him of certain notes secured by a chattel mortgage on said property; third, that out of the profits of said business said Wamsganz may repay himself said three hundred dollars at once and that next out of the profits of said business there shall be paid the sum of two hundred ninety-eight and thirty-two one hundredths dollars together with costs and interest due the Eau Claire-St. Louis Lumber Company, also the indebtedness due the Scarritt Furniture Co. in the sum of fifty-nine dollars, the indebtedness due Hess & Culberson in the sum of fifteen dollars, the indebtedness due Staudte & Rueckholdt in the sum of twenty dollars, and said Wamsganz may make such terms as he deems best in relation to indebtedness of one hundred and seventy-five dollars due the St. Louis Carbonating Company; fourth, after said encumbrances have been paid off and discharged the profits of said business shall be equally divided between the parties of the first part and the party of the second part. Fifth. Until the said encumbrances herein mentioned shall have been paid off and discharged no one shall receive any portion of the profits of said business, it being distinctly understood that the first profits of said business shall be applied in payment of the said indebtedness; Sixth. If at the expiration of four months from date hereof, the profits of the business have not amounted to a sum sufficient to pay said lien and encumbrances, the party of the second part may at his option close and terminate this agreement; seventh, it is understood and agreed that party of the second part shall receive and disburse all funds, and shall keep an accurate account of same and proper vouchers for disbursements and that his accounts shall be at all times open to inspection of parties of the first part.

"W. S. Hodges,
"Geo. W. Keene,
"Gus Wamsganz."

Plaintiff testified that immediately after May 1, 1897, he took possession of "The Shelter" and put two young men in charge to conduct the business; that Hodges was also there a part of the time, and that he (plaintiff) was personally present in the evenings of week days and all day on Sundays overseeing the business. Hodges & Keene paid rent for the first two quarters only, and on June 7, 1897, written demand for arrears of rent and declaration of forfeiture of the lease was made on Hodges & Keene by the agent of Mrs. Wolff. Thereafter suit was brought before a justice of the peace against Hodges & Keene for arrears of rent and for possession of the premises, resulting in a judgment for Mrs. Wolff for $450 arrears of rent and for possession of the premises. It was not known to Mrs. Wolff, when this suit was brought and judgment rendered, that Wamsganz was in possession of the premises, and he was not made a party defendant to the suit. On July 11, 1897, the constable, under a writ issued on the judgment and delivered to him, went to the premises for the purpose of putting Mrs. Wolff in possession of the premises. On arriving there he found Wamsganz in possession, levied on the personal property found there, and placed one Godby in charge of the goods, but did not disturb Wamsganz in his possession of the premises. Two days afterwards the constable returned to the premises with the attorney of Mrs. Wolff, and by direction of the latter on the pretext of further executing the writ, forcibly ejected Wamsganz from the premises and restored them to Mrs. Wolff, who, through her attorney, employed Godby to stay upon the premises and hold possession for Mrs. Wolff. Wamsganz sued in replevin for the goods levied on by the constable and obtained a judgment for their recovery, but the goods at no time were removed from the premises. A few days after Wamsganz had been put off the premises by the constable, he and Hodges went out there; Godby

was called off to answer a telephone call, and in his temporary absence Wamsganz took possession; on Godby's return he was told by Hodges that Wamsganz was now in possession. He accused Godby of having pilfered some of Wamsganz's goods and threatened to prosecute him for theft, whereupon Godby handed up the keys to Wamsganz and walked away. Wamsganz then hired two men and opened up the place for business, which continued until July 30, when defendants got possession under the following circumstances: On July 29, defendants, Ed Wolff and Miltenberger, drove out to the premises and hired one H. V. Padfield, who was conducting a business near by to take forcible possession and hold the premises for Mrs. Wolff, agreeing to pay Padfield $200 to take possession, and $5 per day to hold possession after he had obtained it, and to pay $2 per day to each man Padfield might find it necessary to employ to help him get and retain possession. Wolff advised Padfield to take possession at night after Wamsganz's employees had retired, to avoid a fight or disturbance; Padfield carried out this agreement by going upon the premises at 4:30 on the morning of July 30, with four men, one of whom had a revolver in plain view; they found the two employees of Wamsganz asleep; two went to the bed of either employee, awoke him, made him put on his clothing, and by intimidation compelled them both to leave the premises, the possession of which the defendants have since held. As to the personal goods, Wamsganz testified that he went to "The Shelter" and demanded his goods of defendants; that he was denied admission to the premises and told to leave. There is also testimony tending to prove that the agent or servants of the defendants in possession of the premises used and consumed the goods. On the part of defendants the testimony tended to prove that the goods were stored on the premises and had not been used by the appellants at any time; that respondent could have had

them at any time he had called for them.   Their value was estimated at from $75 to $100 by the witnesses.   The agreement collateral to and qualifying the bill of sale was not recorded.

For respondent the court instructed the jury in substance, that "if plaintiff was in the peaceable possession of the premises and being so in possession he was forcibly and against his will evicted therefrom by persons employed by defendants or any of them, they should find for plaintiff against defendants, who employed the evicting parties, and also against such of defendants as thereafter ratified the act," and gave correct instructions on the measure of compensatory and exemplary damages.   The defendants asked an instruction that under all the evidence the plaintiff could not recover, which was refused. They asked eight other instructions on the theory of law that plaintiff could only acquire lawful possession of the premises by the written consent of Mrs. Wolff, and not having such consent he could not recover, all of which were refused and defendants went to the jury without any instructions on their part.

I.   The undisputed evidence is that Wamsganz took immediate and exclusive possession of the premises under his bill of sale from Hodges & Keene on May 1, and continued in possession and conducted the business in his own name and by his own servants and employees until ousted by the constable in July following.   But it is contended by appellants that the collateral agreement made him a partner of Hodges & Keene, and that his possession was not in law exclusive, but joint with that of Hodges & Keene as his partners.   We do not so interpret that agreement.   By it a partnership was provided for not *in presenti*, but to take effect at the end of four months, if within that time the profits of the business should equal the amount of the debts of Hodges & Keene, which Wamsganz

had assumed and agreed to pay as a consideration for the sale to him. . If the profits should not be sufficient to pay these assumed debts, then Wamsganz had the option to terminate the agreement and business so far as he was concerned. These provisions of the contract are wholly inconsistent with the idea of an existing partnership. Wamsganz's possession and dominion over the goods and of the premises in law and fact was rightful, paramount and exclusive as to Hodges & Keene, but wrongful, that is not by lawful right, as to Mrs. Wolff; as to her he was a tenant at sufferance only, and might have been evicted without first being notified to quit. Urton v. Sherlock, 61 Mo. loc. cit. 257, and citations; Meier v. Thiemann, 15 Mo. App. 307, and citations. But his possession was gained in a peaceable manner; he was not a tort feasor, but was in the quiet enjoyment of the premises and could not be lawfully dispossessed by force by any one. R. S. 1899, sec. 3319. His eviction by the constable under the writ of restitution against Hodges & Keene was without legal authority, in violation of section 3320, Revised Statutes 1899, and the constable and Godby his guard, were guilty of a forcible entry and detainer within the meaning of the above section, and Wamsganz had the lawful right to regain possession as against these tort feasors whenever he could do so without force. This he did do and continued in the possession of the premises and conducted his business therein until the morning of July 30, when he was forcibly evicted by the hirelings of the appellants, employed for the express purpose of making a forcible entry and unlawful detainer of the premises. Appellants contend that as Wamsganz was not the tenant of Mrs. Wolff and was wrongfully in possession as against her, she the owner being entitled to possession, had a right to use whatever force was necessary, short of committing a breach of the peace, to possess herself of her premises, and as no breach of the peace was

committed by the forcible entry and detainer, no wrong was done, and respondent ought not to recover. This contention is not in accord with section 3319, *supra*, which prohibits the forcible entry and detention of lands, etc. (except by legal process), by the owner or any one else. Emerson v. Sturgeon, 59 Mo. 404; Dilworth v. Fee, 52 Mo. 130; Sutton v. Sapp, 62 Mo. App 204. Respondent's possession, though wrongful, was peaceable and was under the protection of the law, and he could only be rightfully disturbed by due course of law. His damages, however, for the forcible eviction by the owner entitled to the immediate possession, were only nominal, and the jury were so instructed. The $350 actual damages assessed by the jury we assume were given on account of the wrongful taking and conversion of the personal property taken with the premises by the appellants.

II. Appellants further contend that the evidence did not warrant an instruction for exemplary damages. In State v. Jungling, 116 Mo. at page 165, the supreme court says: "To entitle the plaintiff to recover punitive damages he must show that the act complained of was unlawful, and further that it was a wanton or malicious act. In other words he must show an unlawful act coupled with an intentional wrong." The forcible entry was unlawful, because prohibited by statute. Its purpose was to wrong the respondent, by taking that from him by force which he was entitled to hold until deprived of its possession by due process of law, hence we conclude that an instruction on punitive damages was eminently proper under the evidence in the case. Beck v. Dowell, 111 Mo. 506; Joice v. Branson, 73 Mo. 28; Buckley v. Knapp, 48 Mo. 152; Green v. Craig, 47 Mo. 90; Canfield v. Railway, 59 Mo. App. loc. cit. 365.

III. The concluding clause of instruction number 1 given for plaintiff, which told the jury that they should find

against all the defendants who ratified the acts of the persons who directed or committed the tort, is condemned. Acquiescence in the commission of a tort after the act does not make the party thus acquiescing a party to the wrong, nor liable therefor as a joint tort feasor; to be made liable he must not only assent to the wrong, but the act must have been done for his benefit. Allred v. Bray, 41 Mo. 484; Page v. Freeman, 19 Mo. 421; Gray v. McDonald, 28 Mo. App. 477. This error, however, is non-prejudicial, for the reason that all of the defendants either directed the wrongful act, or it was done for their benefit, and they ratified the act and took the fruits thereof.

Discovering no reversible error, we affirm the judgment. Judge *Biggs* concurs; Judge *Bond* not sitting.