JOSEPH J. CHAPPEE, Appellant, v. LUBRITE REFINING COMPANY.—85 S. W. (2d) 1034.

Division Two, September 3, 1935.*

*NOTE: Opinion filed at May Term, 1935, July 11, 1935; motion for rehearing filed; motion overruled at September Term, September 3, 1935.

*Vernon W. Meyer* and *Wm. J. Becker* for appellant.

*Cobbs & Logan* and *Walter L. Roos* for respondent.

WESTHUES, C.—This is a suit, asking damages in the sum of $29,000, brought by appellant against respondent for an alleged breach of contract in that respondent wrongfully evicted appellant from a filling station of which appellant had possession under a contract with respondent. The trial court, at the close of plaintiff's case, instructed the jury to return a verdict for plaintiff in the sum of one dollar. Respondent did not offer any evidence. From a judgment entered appellant appealed.

Under the terms of the contract in question, appellant was granted the right to operate a filling station of respondent's, located at Southwest and Columbia avenues in the city of St. Louis, for a term ending May 31, 1934. Appellant took possession of the premises February 1, 1925. By the terms of this contract appellant agreed to pay respondent $40 per month for the use of the premises. It was further agreed that appellant had the right to purchase gasoline "at 2.3¢ per gallon under the retail selling price of Lubrite gasoline as posted in the city of St. Louis, Missouri, at the time of delivery of same," and other articles of merchandise, usually sold at

filling stations, at regular wholesale prices. It was further agreed as follows:

"The party of the second part agrees to purchase from the party of the first part and pay for and dispose of a minimum of six thousand (6000) gallons of gasoline and one hundred and twenty (120) gallons of motor oils each month during the period of this contract. Failure of party of the second part to buy and pay for said minimum gallonage of gasoline and oils during any one month from the date of this contract shall constitute a forfeiture of this contract, unless such forfeiture is waived by party of the first part, and in this event this contract may be terminated on 10 days' written notice from party of the first part to party of the second part as hereinbefore set out."

The part referred to in the last line just quoted read as follows: ". . . except that should party of the second part violate any of the provisions of this contract or of the lease on said premises, party of the first part is given the privilege of taking back the premises, building and all equipment described herein by first giving to the party of the second part ten (10) days' written notice of party of the first part's intention to take back said premises, building and equipment on account of breach of contract by party of the second part, said notice to be mailed to party of the second part's last known address in the City of St. Louis, State of Missouri."

Other provisions of the contract are immaterial for a disposition of this case and will, therefore, not be noticed. Appellant remained in possession and operated the filling station until the first day of May, 1926. As to what occurred on the morning of May 1, appellant testified:

"Q. Why didn't you remain there after that? A. Because on the morning of May 1st, when I got in sight of the filling station I seen somebody serving somebody's automobile gasoline. When I got inside of the premises I saw Mr. Sneed and Mr. Goller and Mr. McCaw, and a stranger, whose name was Mr. Kelly, I found out afterwards. Mr. Sneed was inside the place, the same Mr. Sneed I had met in the office. I think he was House Attorney, Mr. Goller, I think, was Secretary and Treasurer, Mr. McCaw was the Station Manager at that time. I said to Mr. Sneed, 'What the hell are you fellows trying to do,' and he said, 'Chappee, we have taken possession. You are no longer needed here,' and I said, 'The hell you say. Get out and get out quick.' I hung up my overcoat, picked up a piece of gas pipe and walking out with it, said, 'There's the door, get out quick,' and he said, 'Officer, arrest this man for disturbing my peace and threatening me with a gas pipe.' That was the first I knew an officer was there, and he arrested me."

It was admitted respondent's agents went to the filling station about four-thirty A. M., May 1, 1926, sawed the locks and took and

retained possession of the station. The trial court permitted appellant to introduce evidence on the question of damages showing the amount of earnings received from the operation of the station.

Appellant contends that the judgment should be reversed and the cause remanded because the trial court erred in giving an instruction directing the jury to return a verdict for him in the sum of one dollar. It is urged that appellant was entitled to substantial damages and that the question of the amount of damages was for a jury. Respondent, on the other hand, takes the position that under the pleadings and the evidence the trial court should have sustained a demurrer at the close of appellant's case, as requested by respondent; that, therefore, error, if any was committed by the court in directing the jury to assess damages at only one dollar, was harmless.

It is well-settled law that if a plaintiff, under all the evidence, is not entitled to a verdict against his adversary, then any errors appearing in the instructions are rendered harmless on the theory that a plaintiff who has no case cannot be hurt by the giving of erroneous instructions. [Trainer v. Sphalerite Mining Co., 243 Mo. 359, l. c. 371, 148 S. W. 70, Ann. Cas. 1913C, 949; Barr v. Mo. Pac. Ry. Co., 37 S. W. (2d) 927, l. c. 929(1).]

We have reached the conclusion that respondent's contention must be sustained; that is, under all the evidence and appellant's petition he was not entitled to any actual damages. Appellant, by his petition, asked only for actual damages alleged to have been sustained through loss of future earnings of which he was deprived by respondent's wrongful breach of the contract. Respondent takes the position that appellant breached the contract and was notified that the contract had been terminated as of May 1, 1926; that respondent, under the contract, had the right to take possession of the filling station after the contract had been breached by appellant. Appellant in his petition admitted that he had not performed his contract. Note the following allegation of the petition:

"Plaintiff further states that he paid all the rent and made all the payments to be made by him under the said lease and contract up to May 1st, 1926, and fully complied with the terms and provisions of said lease and contract, except the provision requiring plaintiff to sell 6000 gallons of gasoline and 120 gallons of Lubrite Lubricating Oil per month, which provision was waived by defendant, and on April 29, 1926, mailed to the defendant his check in and for the sum of Forty Dollars ($40 00) for the rent of said premises for the month of May, 1926, but the defendant refused to accept the same and on May 1, 1926, through its attorney, Edw. R. Sneed, Esq., with the statement that they, the defendant, had taken possession of the said premises on said day, May 1st, 1926, and that the plaintiff did not owe them anything further."

Appellant denied having signed the contract which respondent

produced at the trial and which was offered in evidence. He admitted, however, that he had signed a contract containing substantially the provisions noted above. Note his testimony:

"The contract that I heard Mr. Sneed dictating said this with reference to selling 6000 gallons of gasoline and 120 gallons of lubricating oil per month 'it is therefore agreed, the party of the second part agrees to purchase of the party of the first part, a minimum of 6000 gallons of Lubrite gas and 120 gallons of Lubrite lubricating oil each month, unless otherwise waived.' "

Under appellant's own testimony he bought and sold the required amount of gasoline during only one month of the fifteen months he occupied the station.

■ As to waiver, by respondent, of the provision requiring 6000 gallons of gasoline to be bought and sold per month the record is as silent as a tomb. This question was not briefed, nor has appellant pointed out in what manner respondent waived this requirement. The only facts to which appellant could point to indicate a waiver were that he, appellant, had breached the contract from month to month and respondent had failed to exercise the right to take a forfeiture. Such action, standing alone, on the part of respondent was not sufficient to prove that respondent had permanently waived the requirement made in the contract. The evidence discloses that respondent in February, 1926, warned appellant in writing that appellant was not complying with the terms of the contract. Appellant was notified on April 8, that he had breached his contract, that it had been terminated, and that he was to vacate the premises on May 1, 1926. Appellant admitted having received the communications. Respondent may have labored under the impression that appellant would in the course of time build up a trade sufficient to comply with the terms of the contract and, therefore, temporarily waived that provision. But the record contains no fact from which it can be inferred that respondent permanently waived any such provision. In State ex rel. v. Becker, 77 S. W. (2d) 100, l. c. 105 (3-6), we quoted with approval the following from Schwab v. Brotherhood of American Yeomen, 305 Mo. 148, 264 S. W. 690, l. c. 692:

" 'A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part." [See, also, 27 R. C. L., p. 904.]

■ Since appellant admitted having received notice, as provided for in the contract, that the contract had been terminated and possession of the premises would be taken over by respondent on May 1, we need not discuss the sufficiency of the notice. Appellant having breached a provision of the contract, which authorized respondent to terminate the contract and to take possession of the

premises, was not thereafter legally entitled to possession. Appellant's eviction from the premises, by respondent, in these circumstances did not give appellant a right to damages such as he seeks to recover in this case, that is, loss of anticipated earnings under the contract. In so holding we are following a well-beaten path marked by prior decisions directly in point. The case of Wamsganz v. Wolff, 86 Mo. App. 205, deals with the question of actual damages in a case of an eviction by force. In that case the defendant was entitled to possession and possession was gained by *force and violence*. The court held that the action of the defendant was in direct violation of the forcible entry and detainer statutes of this State. The court, however, held that plaintiff was entitled to only nominal damages. Note the following at page 214 of the opinion:

"Appellants contend that as Wamsganz was not the tenant of Mrs. Wolff and was wrongfully in possession as against her, she the owner being entitled to possession, had a right to use whatever force was necessary, short of committing a breach of the peace, to possess herself of her premises, and as no breach of the peace was committed by the forcible entry and detainer, no wrong was done, and respondent ought not to recover. This contention is not in accord with Section 3319, supra, which prohibits the forcible entry and detention of lands, etc. (except by legal process), by the owner or any one else. [Emerson v. Sturgeon, 59 Mo. 404; Dilworth v. Fee, 52 Mo. 130; Sutton v. Sapp, 62 Mo. App. 204.] Respondent's possession, though wrongful, was peaceable and was under the protection of the law, and he could only be rightfully disturbed by due course of law. His damages, however, *for the forcible eviction by the owner entitled to the immediate possession, were only nominal,* and the jury were so instructed. The $350 actual damages assessed by the jury we assume were given on account of the wrongful taking and conversion of the personal property taken with the premises by the appellants." (Italics ours.)

The case of Levy v. McClintock, 141 Mo. App. 593, 125 S. W. 546, is directly in point and we desire to quote with approval the following found on pages 595 and 596 of 141 Mo. App.:

"But as the case is briefed and argued in this court by each party, there is no question of fact in it; the contention between them being brought down to legal questions involving the rights of a tenant holding over against his landlord's consent, who is dispossessed against his will by the landlord's entry into the premises; though in taking possession defendant did not offer personal violence to plaintiff, nor did he destroy any of his property.

"There was a time in the early days in England when the owner could forcibly dispossess one in possession without legal right, as for instance, a tenant holding over, and the latter was without remedy. This state of the law led to unseemly conflicts and breaches of

the peace so that by act of parliament it was made unlawful both criminally and civilly for the owner thus to take the law into his own hands. By these acts against forcible entry the rightful owner, though entitled to the possession, was made to restore it and set to seeking his rights in a lawful manner. These forcible entry and detainer statutes are found enacted, in quite similar form, in most of the States in this country. In this State they are found in the statutes of 1899, Sections 3319-3357 and Section 2151.; So in view of the common law as it stood prior to such statutes, it was held that as the tenant had no remedy prior to the statutes he had none after their enactment save such as they gave. It was broadly stated that 'at common law there was no civil remedy against a person who entered forcibly, having a right.' [Taunton v. Castor, 7 Term. 43.] And our Supreme Court so states the law in the cases of Krevet v. Meyer, 24 Mo. 107, and Fuhr v. Dean, 26 Mo. 116. It is so stated in a great number of cases arising in England and in this country. [Hyatt v. Wood, 4 Johns. 150; Jackson v. Stansbury, 9 Wend. 202; Yeates v. Allin, 2 Dana, 134.]''

A judgment for plaintiff in that case was reversed because the defendant was entitled to possession and he gained that possession peaceably, but against the will of the plaintiff. After reviewing cases from this and many other states the court announced the following rule of law:

"So we conclude that where there is no personal violence and no unlawful destruction of the tenant's property by the landlord in his entry, the former is without remedy except under the statute of forcible entry and detainer. Under that statute a tenant dispossessed against his will, may find redress by a showing of facts which would fall far short of sustaining an action *quare clausum fregit.*"

It follows that under appellant's petition, the admitted facts in this case, and the law applicable thereto appellant was not entitled to recovery any damages. The judgment is, therefore, affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.