CASSAUNDRA SPINKS v. JOHN R. TAYLOR, JR., TRADING AS TAYLOR REALTY

DOROTHY L. RICHARDSON v. JOHN R. TAYLOR COMPANY, INC.

No. 7918DC1063

(Filed 3 June 1980)

1. **Landlord and Tenant § 18– notice to tenant of padlocked premises – no simulation of court document**

Spinks v. Taylor and Richardson v. Taylor Co.

Defendant's use of the words "Legal Notice" on a padlocking notice posted on the doors of tenants who were late paying their rent did not violate G.S. 75-54 which prohibits the use of false representations in efforts to collect debts and the use of paper writings that simulate documents authorized or issued by a court or other legal authority, since the notice in question clearly was not a simulated court notice.

2. **Landlord and Tenant § 18– nonpayment of rent – provision for termination and padlocking of premises – provision not unconscionable**

There was no merit to plaintiff's contention that the termination provision of their lease, which allowed for padlocking of the premises upon failure to pay rent and after notice by the landlord, was unconscionable and therefore unenforceable as violative of public policy, since it was not the padlocking procedures that deprived plaintiffs of a place to live but their failure to pay rent, and a tenant in N.C. cannot retain possession of premises without paying rent, even to protest alleged wrongful acts of the landlord in providing substandard conditions in the premises.

3. **Landlord and Tenant § 19– failure to pay rent – landlord's exercise of self-help proper**

A landlord can lawfully exercise peaceful, nonviolent self-help in N.C. to regain possession of leased premises where the tenant fails to pay rent.

APPEAL by plaintiffs from *Cecil, Judge.* Judgments entered 14 August 1979 in District Court, GUILFORD County. Heard in the Court of Appeals 24 April 1980.

These two actions were consolidated for trial and appeal as they involve common questions of law and fact. Plaintiffs seek damages from defendant for breach of rental agreements by wrongfully padlocking plaintiffs' apartments and depriving them of possession and use of the apartments and their personal property. Although plaintiff Spinks sued John R. Taylor Company; Inc., plaintiff's amended complaint and defendant's amended answer establish that John R. Taylor rents the apartments in dispute and that he is the proper party defendant.

In the Spinks case the parties stipulated defendant leased an apartment to Spinks 1 November 1976 and she occupied it until 1 August 1977. On 16 May 1977 defendant padlocked the apartment, without judicial process, and after Spinks paid the past-due rent, the padlock was removed. On 15 July 1977 defendant again padlocked the apartment without judicial process. At least ten days prior to the padlocking, defendant had given Spinks notice of default and demand for payment.

The stipulation in the Richardson case is essentially the same, except that Richardson's apartment was only padlocked once, after which she paid the past-due rent and the padlock was removed.

The leases involved contain the following provisions:

15. RULES AND REGULATIONS: The various rules and regulations which are attached to this Lease and such alterations, additions, and modifications thereof as may be from time to time made by the Agent, shall be considered a part of this agreement, with the same effect as though written herein, and the Resident covenants that said rules and regulations shall be faithfully observed by the Resident, the employees of the Resident, and all persons invited by the Resident on or in said premises. The right is reserved by the Agent to add to, alter, modify or rescind from time to time, said rules and regulations. The Agent, however, shall have the right to change said rules and regulations and to waive in writing any or all of said rules and regulations and to waive in writing any or all of said rules and regulations in the case of any one or more residents.

. . . .

19. TERMINATION BY AGENT (DEFAULT, OBJEC-TIONABLE CONDUCT, RE-ENTRY): If the Resident defaults in the payment of rent after the same becomes due, or if the Resident violates the covenants of this Lease, or if the Agent at any time shall deem the conduct of the Resident or visitor ... the Resident objectionable or improper, the Agent may give the Resident five (5) days written notice of the Agent's intention to terminate this Lease, and this Lease shall terminate at the expiration of such five-day period, anything to the contrary herein notwithstanding. At such time, the Agent shall have the right to re-enter and take possession of the leased premises, without process or by legal process from the Court having jurisdiction over the premises. In the event of re-entry by the Agent as provided in this and the next paragraph, the Resident shall

be liable in damages to the Agent and Owner for all losses sustained.

. . . .

22. NOTICES: ... The Resident agrees to accept as sufficient notice required by law any written notice delivered personally to the Resident or mailed to the premises.

Plaintiffs and defendant filed motions for summary judgment. Spinks's complaint was verified; Richardson's was not. Defendant offered the affidavits of defendant Taylor and R. Walton McNairy.

Taylor's affidavit showed that he managed the apartment complexes where plaintiffs had lived and was familiar with the rules and regulations which the tenants were required to follow. When delinquency in rentals and the increase in evictions became unmanageable, he sought legal advice, and the witness McNairy established the self-help remedies Taylor later adopted. These procedures for self-help were carefully explained to all apartment managers. The rent is due in full on the first day of the month. Tenants who have not paid by the eighth of the month are given notice that unless the rent is paid before the date set, the apartment will be padlocked on the last Tuesday of the month. This gives tenant a notice of the impending padlocking of from sixteen to twenty-three days, depending upon the month. At least ten days' notice of the proposed padlocking is always given. On the day scheduled for the padlocking the manager goes to the apartment and knocks loudly, identifying himself and the purpose of the visit. If tenant then pays the rent, the procedure ends. If tenant indicates he intends to stay in possession of the apartment, the manager ceases the padlocking, tells tenant that court proceedings will be begun, and leaves. If no one answers the manager's knock on the door, manager opens the door to the apartment and again announces the purpose of his presence. Then he carefully checks to see that no animals or persons, particularly small children, are present. If the tenant has vacated the apartment, it is not padlocked; otherwise, it is. Notice of the padlocking is taped on the door. Then, the manager attempts to personally notify tenant of the

padlocking. If the tenant requests personal property from the padlocked apartment, the tenant may enter and remove this property without payment of the past-due rent. If the tenant, after entering to retrieve personal property, refuses to leave the apartment, the manager tells tenant that court proceedings will be started and the padlock is removed. Once a tenant objects to padlocking, the self-help procedures end and resort is made to the courts. Usually, most tenants pay once the padlocking procedures begin; only an average of one tenant per month is evicted by padlocking. Basically, this is because rent is not allowed to accumulate for more than one month. When court proceedings are required, several months' rent accumulates and tenants are not financially able to pay.

After considering the materials before it, the trial court denied plaintiffs' motions for summary judgment and allowed the summary judgment motions of defendant. Plaintiffs appeal.

*Central Carolina Legal Services, by Robert S. Payne, and Ling & Farran, by Jeffery P. Farran, for plaintiff appellants.*

*Smith, Moore, Smith, Schell & Hunter, by Bynum M. Hunter, Jeri L. Whitfield and Suzanne Reynolds, for defendant appellee.*

MARTIN (Harry C.), Judge.

Plaintiffs contend the self-help eviction procedures of defendant are contrary to the law of North Carolina and, therefore, the court erred in denying their motions for summary judgment and in allowing summary judgment for defendant.

They first argue defendant's agents who carry out the padlocking procedures are "debt collectors" as defined by N.C.G.S. 75-50 (3) and therefore bound by the provisions of Article 2 of Chapter 75. We do not decide whether defendant's agents are "debt collectors" within the meaning of the statute because the record fails to show any violations of Article 2 by them. N.C.G.S. 75-51 (1) prohibits the use or threat of violence of illegal means to cause harm to any person, his reputation, or his property.

Plaintiffs make no allegations of violence by defendant's agents and, as will be hereinafter discussed, the padlocking procedures are not illegal. Nor has there been any representation of seizure of property as proscribed by N.C.G.S. 75-51 (6), or threat of illegal action prohibited by N.C.G.S. 75-51 (8).

[1] N.C.G.S. 75-54 (4) and (5) prohibit the use of false representations in efforts to collect debts and the use of paper writings that simulate documents authorized or issued by a court or other legal authority. Plaintiffs argue defendant's use of the words "Legal Notice" on the notice of padlocking violates this statute. We do not agree. The notice used by defendant is well within the bounds established in *State v. Watts*, 38 N.C. App. 561, 248 S.E. 2d 354 (1978), *disc. rev. denied*, 296 N.C. 414, 251 S.E. 2d 473 (1979). There the notice to vacate was drawn in the form of the usual notice used in court proceedings except for the absence of a case heading and docket number. The Court in *Watts* held it was obvious the notice was issued not by a court official but by the agent of the owner. The padlock notice here at issue reads:

GUILFORD COUNTY     PADLOCKED APARTMENT

NORTH CAROLINA      LEGAL NOTICE

This apartment has been padlocked for nonpayment of rent. ANYONE ENTERING THE APARTMENT IS A TRESPASSER AND WILL BE PROSECUTED.

The previous resident may regain legal possession of the apartment by immediately paying the past due rent.

The previous resident can recover any personal property left in the apartment by immediately contacting the resident manager.

The notice is clearly not a simulated court notice.

Plaintiffs urge us to find N.C.G.S. 75-1.1 applicable to the facts of this case, relying upon *Love v. Pressley*, 34 N.C. App. 503,

239 S.E. 2d 574 (1977), *disc. rev. denied,* 294 N.C. 441, 241 S.E. 2d 843 (1978). In *Love,* the tenants were not in default on their lease and were in rightful possession of the premises. In our case, plaintiffs do not deny that they were in default on their rent. *Love* is distinguishable from this case and we find no merit in plaintiffs' arguments concerning the applicability of N.C.G.S. 75-1.1.

[2] Next, plaintiffs argue that paragraph 19 of the lease, the termination provision, is unconscionable and therefore unenforceable as violative of public policy. The law argued by plaintiffs on unconscionable contracts is accurate but has no application to the facts of plaintiffs' cases. Here, it is not the padlocking procedures that deprive plaintiffs of a place to live, but their failure to pay the rent. Plaintiffs offer no reason for failing to pay their rent. In North Carolina a tenant cannot retain possession of premises without paying rent, even to protest alleged wrongful acts of the landlord in providing substandard conditions in the premises. *Thompson v. Shoemaker,* 7 N.C. App. 687, 173 S.E. 2d 627 (1970). We must reject plaintiffs' argument that paragraph 19 is unconscionable and unenforceable.

[3] Last, plaintiffs contend the public policy and law of North Carolina prevent remedies of self-help as used by defendant. Obviously, a landlord cannot without judicial process seize and sell a tenant's personal property to collect delinquent rent. *Dalgleish v. Grandy,* 1 N.C. 249 (1800). There has been no effort by defendant here to seize plaintiffs' personal property for the purpose of collecting past-due rent, either by sale of the property or by holding it till the rent was paid. A landlord can lawfully exercise peaceful, nonviolent self-help in North Carolina to regain possession of leased premises where the tenant fails to pay rent. *Mosseller v. Deaver,* 106 N.C. 494, 11 S.E. 529 (1890). In *Mosseller,* defendants had used force to eject plaintiff from possession, and plaintiff sued for damages. The trial court instructed the jury that defendants had the right to use force to remove plaintiff, but no more force than was necessary. On appeal, the Supreme Court ordered a new trial, holding the instruction to be error and stating: "[W]e cannot approve of the instruction given, as it is not only opposed to the public policy, which requires the owner to use *peaceful means* or resort to the

courts in order to regain his possession, ... ." *Id.* at 495, 11 S.E. at 530 (emphasis added). Thus, while North Carolina rejects the use of force to regain possession, peaceful means by an owner may be utilized. Plaintiffs do not contend defendant used force to regain possession of the premises.

North Carolina has held the changing of locks on a door to keep out an occupant is not a forcible entry within the meaning of the criminal laws. For there to be a forcible entry there must be some force or violence in excess of a simple trespass. *State v. Leary*, 136 N.C. 578, 48 S.E. 570 (1904). The placing of the padlock by defendant is the basic act that deprived plaintiffs of possession. Under *Leary*, this appears to be a peaceful means.

We believe that under the common law of North Carolina when a tenant fails to pay rent and to vacate leased property, the owner may use peaceful means to regain possession of the property. Upon failure to regain possession thereby, he may resort to the courts. *Mosseller, supra.* This is in accord with other common law jurisdictions. *See Krasner v. Gurley*, 252 Ala. 235, 40 So. 2d 328 (1949); *Calef v. Jesswein*, 93 Ind. App. 514, 176 N.E. 632 (1931); *Paddock v. Clay*, 138 Mont. 541, 357 P. 2d 1 (1960); *Liberty Ind. Park Corp. v. Protective Pkg. Corp.*, 71 Misc. 2d 116, 335 N.Y.S. 2d 333 (1972), *aff'd*, 351 N.Y.S. 2d 944 (1974). The rule is succinctly stated in 50 Am. Jur. 2d Landlord and Tenant § 1220 (1970), as follows:

> According to many cases, where a landlord is wrongfully held out of possession by an overstaying tenant, he may, when the opportunity presents itself, gain possession of the leased premises by peaceable means, and necessity for recourse to legal process exists only where peaceable means fail and force would be necessary; thus, where the tenant's right of possession has terminated, the landlord has the right to re-enter the leased premises peaceably, as where the tenant is absent.

In a case similar to the one *sub judice*, the Missouri Supreme Court in *Chappee v. Lubrite Refining Co.*, 337 Mo. 791, 85 S.W. 2d 1034, 101 A.L.R. 471 (1935), held a tenant whose lease had been rightfully terminated is not entitled to recover damages for the

act of the lessor in peaceably taking possession of the premises, although against the lessee's will.

In addition, the modern policy of diverting conflicts away from the courts supports lawful self-help remedies. This theory, utilizing arbitration, "citizen courts," referees, traffic offense commissions, debt-counselling services, tax conferences, and other non-court methods of resolving disputes, recognizes that the courts cannot resolve every dispute between persons or between persons and the state. Proper and peaceful self-help remedies by landlords have a place in this scheme. Where a dispute can be properly resolved in a peaceful manner, one is not required to seek the services of the courts. Here, plaintiffs do not deny that they were delinquent in their rent payments and that defendant was entitled to possession of the premises. They only insist defendant could not use peaceful self-help to regain possession of the premises and that he must resort to the courts for this purpose. Under the facts of this case, we reject plaintiff's argument.

The court properly denied plaintiffs' motions for summary judgment and properly granted summary judgment for defendant. *Kessing v. Mortgage Corp.* 278 N.C. 523, 180 S.E. 2d 823 (1971).

Affirmed.

Judges VAUGHN and CLARK concur.