George E. BLUE, Petitioner-Appellee,

v.

Marvin R. HOGAN, Warden, U. S. Penitentiary, Atlanta, Georgia, Respondent-Appellant.

No. 76–4358.

United States Court of Appeals, Fifth Circuit.

June 10, 1977.

Rehearing and Rehearing En Banc Denied Aug. 4, 1977.

John W. Stokes, U. S. Atty., Richard A. Horder, Asst. U. S. Atty., Atlanta, Ga., Henry E. Davis, U. S. Dept. of Justice, Washington, D. C., for respondent-appellant.

Ralph Goldberg, David Buffington, Atlanta, Ga., for petitioner-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

Marvin Hogan, warden of the federal penitentiary at Atlanta, Georgia, appeals

from a district court judgment affecting the institution's practices with respect to certain publications to which prisoner Blue subscribes. The court ordered appellant to deliver publications he had withheld from appellee, to deliver future issues of the same three periodicals unless the court ordered otherwise, to comply with the court-ordered prison policy respecting censorship of periodicals, and to post notices announcing the new policy. We reverse.

On November 20, 1975, appellee filed a petition for a writ of habeas corpus, alleging that he was a subscriber to three magazines—*Midnight Special, The Outlaw,* and *Revolution*—and that prison officials had withheld from him issues of the magazines for the previous 12 months. Appellant responded that the magazines had been withheld because they were likely to have a "deleterious and detrimental effect on the inmate population at the institution." The magazines advocated "prison unionism," which has nothing to do with organizing employees but rather with organizing inmates for the pressing of grievances.[1] Appellant's response to the petition further stated that prison officials believed the magazines to be inflammatory and likely to promote prisoner agitation with resulting prison disruption. A hearing was held on March 22 and 23, 1976, at which the parties introduced testimony and other evidence relating to the prison's policies and the contents of the magazines. Since a remand is necessary for application of the proper standard to the facts, it is unnecessary here to detail the evidence adduced at the hearing.

The magazines were withheld under the authority of Federal Bureau of Prisons' policies and parallel local policies. During most of the relevant period these policies were embodied in Bureau Policy Statement 7300.42A and its companion local Policy Statement A–7300.42. Under those two Statements a decision to exclude a publication "must be based on a clear showing that admission of the publication will jeopardize the discipline and good order of the institution." These Statements were superseded on September 2, 1975 by Bureau Statement 7300.42B, which apparently reiterated the same standard for exclusion and provided for notice and administrative appeal. The standard for exclusion was changed during the course of the district court's proceedings by Bureau Statement 7300.42C, effective May 4, 1976, which states that "[a] publication is not acceptable if it is determined to be detrimental to the security, good order or discipline of the institution."

The district court made findings of fact and conclusions of law in a memorandum dated August 10, 1976. It concluded that the magazines could be excluded only if they present a clear and present danger or contain advocacy which incites and is likely to produce imminent lawless action; citing *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Further, the court concluded that the magazines did not present such dangers and should not have been withheld.[2] The order indicated that the court would require delivery of past and future issues of the magazines in question and required that appellant formulate and submit to the court a local policy statement regarding censorship of periodicals to implement the Bureau's Policy Statement of May 4, 1976. This local policy was to incorporate the clear and present danger test.

1. *See generally North Carolina Prisoners' Labor Union, Inc. v. Jones,* 409 F.Supp. 937, 940 (E.D.N.C.), *probable jurisdiction noted,* 429 U.S. 976, 97 S.Ct. 483, 50 L.Ed.2d 583 (1976); *Paka v. Manson,* 387 F.Supp. 111, 115 (D.Conn. 1974).

2. The court stated that:
   In examining very carefully the issues of *The Outlaw,* and the issue of *Midnight Special* and *Revolution* this Court finds . . . that the type of articles, letters, poetry, etc. is not of a nature "directed to inciting or pro-

ducing imminent lawless action and . . . likely to incite or produce such action." Furthermore, it is the opinion of this Court that a discussion in the form of a newspaper article or letter of formation of unions does not on its face present a clear and present danger; and, without further proof by respondents that such reading matter is likely to incite imminent lawless action, the same cannot, under the First Amendment be banned from prisoners' reading.

The court entered final judgment on November 24, 1976, but eventually stayed its effect to January 3, 1977. In the judgment the court ordered: (1) appellant to deliver appellee's copies of *Midnight Special, The Outlaw,* and *Revolution* which had been withheld; (2) appellant not to deny prisoners at the institution access to those magazines unless otherwise ordered by court; (3) appellant and other officers and employees at the prison to comply with all procedures enumerated in the local plan the court had previously ordered to incorporate the clear and present danger test; and (4) appellant to post notices informing prisoners of the local plan's new standard and procedures.

■ Appellee concedes that a remand is necessary at least for the purpose of conforming the court's order and judgment to the requirements of Federal Rule of Civil Procedure 65(d). First, the injunction does not state the reasons for its issuance. Second, the portion of the injunction relating to compliance with the local plan does not "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Failure of a district court to comply with FRCP 65(d) requires reversal of the injunctive order. *Central Gulf Steamship Corporation v. International Paper Co.,* 477 F.2d 907, 908 (5th Cir. 1973); *Alberti v. Cruise,* 383 F.2d 268, 271–72 (4th Cir. 1967).

■ Appellant contends that the standard enunciated in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), should govern the instant case, not the clear and present danger standard. We agree that *Procunier v. Martinez* governs. That case in part dealt with censorship of prisoners' personal correspondence by the

California Department of Corrections pursuant to a policy prohibiting the sending or receipt of mail "expressing inflammatory political, racial, religious or other views or beliefs" or containing lewd, obscene, defamatory, or "otherwise inappropriate" matter. *Id.* at 399–400, 94 S.Ct. at 1804, 40 L.Ed.2d at 232. The Court specifically stated that "[t]he issue before us is the appropriate standard of review for prison regulations restricting freedom of speech", adding that "[t]his Court has not previously addressed this question . . . ." *Id.* at 406, 94 S.Ct. at 1808, 40 L.Ed.2d at 236. The Court went on to devise a standard allowing censorship of prisoner mail if: (1) the regulation or practice in question furthers "an important or substantial governmental interest unrelated to the suppression of expression"; and (2) the limitation on first amendment rights is no greater than "generally necessary to protect one or more of the legitimate governmental interests identified above." *Id.* at 413–14, 94 S.Ct. at 1811–1812, 40 L.Ed.2d at 240 (footnote omitted).[3] The Court identified as legitimate governmental interests the security and order of penal institutions and the rehabilitation of inmates.

The standard of *Procunier v. Martinez* clearly applies to this case. The problem of prison mail censorship was a case of first impression for the Supreme Court in *Martinez.* The Court sought to and did establish the general framework for first amendment analysis in this context. The instant case involves censorship of periodicals to which appellee subscribed. We must therefore apply a standard which imposes no greater restriction on the latitude of prison officials than that formulated in *Procunier v. Martinez.*[4]

---

**3.** It is interesting to note the Court's apparent general approbation of Federal Bureau of Prisons policies at *id.* 414 n.14, 94 S.Ct. 1812 n.14, 40 L.Ed.2d 240 n.14. There the Court said that "[w]hile not necessarily controlling the policies followed at other well-run institutions would be relevant to a determination of the need for a particular type of restriction" and cited as an example Federal Bureau of Prisons Policy Statement 7300.1A partially restricting personal correspondence. That Policy Statement is

not the same one pursuant to which the magazines were withheld in the instant case. It is for the district court in the first instance to determine the significance, if any, of footnote 14 of *Procunier v. Martinez* in assessing the actions and policies of the Federal Penitentiary in Atlanta.

**4.** Arguably prison officials may have more latitude in censoring periodicals. The Court in *Procunier v. Martinez* limited its holding to

█ Nonetheless, appellee contends there is no practical difference between the clear and present danger test and that of *Procunier v. Martinez.* Appellee's view is that both tests require "compelling state interests" to justify restrictions on freedom of speech and an imminent likelihood of danger to those interests to justify invoking the restrictions. We think the tests are different. *Accord, Aikens v. Jenkins,* 534 F.2d 751, 755 (7th Cir. 1976). First, the majority opinion in *Procunier v. Martinez* did not cite *Brandenburg, supra,* which was at that time probably the most recent comprehensive restatement of the clear and present danger test. Second, the Court is familiar with "compelling state interest" and "clear and present danger" as terms of art, and they are conspicuously absent from Justice Powell's majority opinion. Third, the test established in *Procunier v. Martinez* by its own terms allows prison officials greater latitude in censoring mail than would the clear and present danger test. In defining the interests that must be furthered by censorship, the Court used the words "important," "substantial," and "legitimate," which appear to require a lesser showing than if the government had to establish a "compelling" interest. Further, to justify application of the restriction the government must show that it is "generally necessary to protect" one of the legitimate governmental interests, which is surely less

demanding than showing that the protected speech is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. at 447, 89 S.Ct. at 1829, 23 L.Ed.2d at 434. The clear and present danger test appears to require a greater demonstration by the government of both the immediacy of the threat of harm and the likelihood that such harm will occur. As the Court said in *Procunier v. Martinez:*

> [P]rison administrators [need not] be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty. 416 U.S. at 414, 94 S.Ct. at 1812, 40 L.Ed.2d at 240.

Since the district court used the wrong legal standard, the only remaining question [5] is whether we should apply the correct standard to the facts or allow the district court to do so in the first instance. We think the district court should first consider application of *Procunier v. Martinez* to the facts. Much of the evidence was in the form of oral testimony which the district court must evaluate. Moreover, the same district court has dealt with other problems involving censorship and prison unionism at the Atlanta penitentiary; [6] that court is

---

censorship of "direct personal correspondence between inmates and those who have a particularized interest in communicating with them" and noted that "[d]ifferent considerations may come into play in the case of mass mailings." *Id.* at 408 & n.11, 94 S.Ct. at 1809 & n.11, 40 L.Ed.2d at 237 & n.11. Since appellant in the instant case has only argued that the *Procunier v. Martinez* standard should apply instead of the clear and present danger standard, we assume without deciding that *Procunier v. Martinez* does control censorship of magazines sent to inmates.

5. Appellee also urges that regardless of *Procunier v. Martinez* this court should adhere to the stringent standard for prison censorship discussed in *Jackson v. Godwin,* 400 F.2d 529 (5th Cir. 1968), which the Supreme Court characterized in *Procunier v. Martinez* as having adopted a standard as demanding as clear and present danger. 416 U.S. at 407, 94 S.Ct. at

1808, 40 L.Ed.2d at 236. According to appellee, *Jackson* is still viable because this court said in *Taylor v. Sterrett,* 532 F.2d 462, 479 (5th Cir. 1976), that the *Jackson* standard "is, broadly speaking, the one applied in *Procunier v. Martinez".* No matter how similar, "broadly speaking," *Jackson* is to *Procunier v. Martinez,* we must apply the latter standard when a particular application of a specific standard is required.

6. In another case, currently pending before this court, *Blue v. Hogan,* No. C76–1160A (N.D.Ga. Sept. 21, 1976) (complaint dismissed), *appeal docketed,* No. 76–4285 (5th Cir.), Judge Moye applied the *Procunier v. Martinez* standard to other claims of Mr. Blue concerning prison officials' alleged interference with his efforts to organize a prisoners' union and their alleged confiscation of periodicals intended for distribution to other inmates. Of course, we intimate no view on the merits of that case.

therefore in a better position than we to consider this particular application of the proper standard.

In sum, we reverse and remand the case for further district court proceedings. If that court concludes that some injunctive relief is warranted, it must comply with FRCP 65(d).

REVERSED and REMANDED.