NOEL WATSON and THE DEPOT, INC., a Hawaii corporation, Plaintiffs-Appellees, *v.* RONALD A. BROWN, General Partner of World Square, a Hawaii limited partnership, Defendant-Appellant

NO. 9564

(CIVIL NO. 7491)

AUGUST 10, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

This is an appeal from a trial court's summary judgment decision ruling out self-help eviction in a commercial lease, and from the trial court's decision to treble a $12,000 general damages award in the subsequent jury trial to $36,000 under antitrust law. We reverse, holding that summary judgment was improper, as was the application of antitrust law.

On October 4, 1972, plaintiffs-appellees Noel Watson, dba The Depot, Inc. entered into a lease agreement with Resort Shops of Kona, to lease store space in its shopping center for a period of five years. During the term of the lease Resort Shops of Kona sold its interest in the lease to World Square Shopping Center (World Square). In mid-1977, The Depot exercised an option in the lease to extend the term of the lease for another five years, to October 3, 1982.

Beginning in February, 1981, Watson missed several tax and rental payments, and on May 1, 1981, Ronald Brown, general

partner of World Square, sent Watson a notice of default. Watson continued to miss rent payments and several rent checks were returned to him for lack of sufficient funds. On October 30, 1981, Brown sent Watson a "Notice of Termination of Tenancy" which stated that Watson was $2,329.09 in arrears, it also stated:

> YOU ARE HEREBY NOTIFIED that pursuant to the provisions of Section 666-2 Hawaii Revised Statutes, your tenancy of that certain space occupied by you on the ground floor of the World Square Shopping Center, formerly known as Polynesian Village, known as space 3-A, is hereby terminated by reason of your failure to pay the agreed rental, therefor, and you are hereby requested, notified, and required to remove from and vacate said premises and surrender and deliver the possession of the same to the undersigned not later than five (5) days following the receipt by you of this notice.[1]

Although not cited in the Notice, the lease gave World Square the right of re-entry upon the tenant's failure to pay rent, and the right to remove all persons and property from the premises, all without resort to legal process:

> Section 23.01. *Right to Re-enter.* In the event of any failure of Tenant to pay any rent due hereunder within ten (10) days after written notice from the Landlord that the same is overdue and unpaid. . . . [T]hen Landlord, besides other rights or remedies it may have, shall have the immediate right of re-entry and may remove all persons and property from the demised premises and such property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of Tenant, *all without service of notice or resort to legal process and without being deemed guilty of trespass, or becoming liable for any loss or damage which may be occasioned thereby.* (Emphasis added.)

On November 9 and 16, 1981, Watson paid $200 and $100 respectively towards the deficiency. On November 24, 1981, without warning, Brown installed padlocks on The Depot doors, effectively locking out Watson. Brown wished to take an inventory of The Depot's merchandise, so the next day an agreement was al-

---

[1] The "Notice of Termination of Tenancy" Brown sent Watson on October 30, 1981, cited HRS § 666-2, which governs leases for indefinite periods of time, and since the lease at hand is for a ten year period, does not apply to this situation.

legedly struck whereby Watson would allow the inventory to be taken if Brown would let The Depot stay open for business. After the inventory was taken, however, Brown closed the store down. He later removed the inventory and fixtures and placed them in storage, but he was forced to return the inventory because it was subject to prior liens in favor of American Security Bank and the Internal Revenue Service.

Watson subsequently filed a complaint alleging wrongful eviction, fraud, negligence, interference with business and/or perspective advantage, conversion, tortious breach of lease, unfair or deceptive trade violations, and intentional and negligent infliction of mental distress. Watson moved for and was granted a partial summary judgment on liability on the ground that World Square was not legally entitled to exercise its rights under the lease to evict Watson without first bringing a summary possession action under Hawaii Revised Statutes (HRS) Chapter 666.

The case then went to trial. Pursuant to the summary judgment decision, the jury was instructed that World Square was not entitled to self-help eviction:

INSTRUCTION NO. 3   The claim for wrongful eviction requires proof that the Defendant intended to have deprived plaintiff Depot of its possession, use, or enjoyment of the premises by force, or trickery, *together with its failure to file a summary possession proceeding in a court of law pursuant to Hawaii law.* (Emphasis added.)

INSTRUCTION NO. 4   Defendant's reliance on a provision in the lease providing for re-entry upon default by plaintiff Depot is not a defense in this case.

It returned a verdict finding World Square liable for wrongful eviction, unfair trade practices and conversion, and awarded $12,000 in general damages and $20,000 in punitive damages. The trial court trebled the $12,000 general damages to $36,000 under HRS § 480-13.

I.

Under early common law, a landlord was privileged to enter upon his land and recover it by force, using violence if necessary,

when a tenancy had terminated. The current English view is that the privilege extends to the use of reasonable force to re-enter the premises. *Mendes v. Johnson*, 389 A. 2d 781 (D.C. App. 1978). Some states adhere to the current English view while more jurisdictions grant the landlord the right to re-enter if he can do so peacefully. A large number of states preclude a landlord from self-help and have adopted the rule that the landlord must, in all cases, resort to the courts for possession of the premises as statutorily provided. *Id.*

Generally non-payment of rent does not work as a forfeiture of the lease, and does not confer a right of re-entry on a landlord. *Hicks v. Longfellow Development Co.*, 362 So. 2d 219 (Ala. 1978). However, in absence of a waiver, the landlord may re-enter for non-payment of rent under an express provision in a lease, in addition to any remedies provided by law. 52 A. C.J.S. § 718b (1968); *Hopkins v. Goetz*, 132 Vt. 581, 326 A. 2d 12 (1972). Section 23.01 of the lease at hand gave World Square the right to re-enter and employ self-help if the tenant failed to pay rent within ten days after written notice regarding unpaid rent was given.

Self-help is not a new issue in Hawaii, and contrary to *United States v. Botelho*, 360 F. Supp. 620 (D. Haw. 1973), Hawaii does have a rule on this issue.[2] This rule had its origin in *Kong Kee v. Kahalekou*, 5 Haw. 548 (1886), where this court held that a landlord could not forcibly evict a tenant for non-payment of rent. *Gomes v. Perry*, 26 Haw. 661 (1922), later held that the Hawaii summary possession statute is not a landlord's sole eviction remedy when a tenancy has terminated, but the landlord may in addition use self-help eviction. The summary possession statute did not provide for an exclusive judicial remedy, so "[l]ike other similar statutes it still leaves the aggrieved party at liberty, subject to certain possible limitations, to recover possession of his property or to redress the wrongs done him without the aid of the courts." *Id.* at 665.

While *Kong Kee* dealt with a commercial lease and *Gomes* dealt with a residential lease, both cases were decided under the precur-

---

[2] *Botelho*, in n. 6 at 625, stated that Hawaii has no rule of law with respect to self-help. The decision found HRS § 666-2 to be controlling, which required written notice to vacate before other action could be taken. It found the oral notice given in that case to be insufficient to confer upon the landlady the right to re-enter the premises.

sor statute to HRS § 666-1. HRS § 666-1 has changed little since its enactment in 1859,[3] and provides:

Whenever any lessee or tenant of any lands or tenements, or any person holding under the lessee or tenant, holds possession of lands or tenements without right, after the termination of the tenancy, either by passage of time or by reason of any forfeiture, under the conditions or covenants in a lease, or, if a tenant by parol, by a notice to quit of at least ten days, the person entitled to the premises may be restored to the possession thereof in manner hereinafter provided.

HRS § 666-1 is silent as to whether a summary action is a landlord's exclusive remedy. The subsequent statute, HRS § 666-2 governs tenancies for indefinite periods of time. It also does not state how these tenancies should be terminated except that prior notice is required:

§ 666-2 *Tenancy from month to month, etc.; termination, extension.* Notwithstanding other provisions of law to the contrary, when real property is rented for an indefinite time with monthly or other periodic rent reserved, such holding shall be construed to be a tenancy from month to month, or from period to period on which rent is payable, and shall only be terminated by written notice to vacate or of intention to vacate given twenty-five days or more preceding the end of any month or period by either landlord or tenant to the other; provided, that when any tenant, without such notice having been given by either landlord or tenant to the other, retains possession of rented premises for any period of time after the expiration of such month or period, a valid and enforceable tenancy shall be thereby created for an additional month or period, as the case may be; *provided, further, that when a tenant under such a tenancy fails to pay the rent reserved at the time agreed upon, the landlord may terminate the tenancy by giving to the tenant a written notice to vacate of not less than five days.* (Emphasis added.)

A statutory remedy is, as a rule, merely cumulative and does not abolish an existing common law remedy unless so declared in express terms or by necessary implication. Some jurisdictions have

---

[3] See Chapter 16, article 40 § 939 (Compiled Laws 1884).

held that the landlord's common law right of self-help has been abrogated and legislative remedies for reacquiring possession are exclusive. *Mendes v. Johnson,* 389 A. 2d 781 (D.C. App. 1978); *Polley v. Shoemaker,* 201 Neb. 91, 266 N.W.2d 222 (1978). Others have held that a landlord can lawfully exercise peaceful, non-violent self-help in accordance with the common law, to regain possession of leased premises where a tenant fails to pay rent. *Spinks v. Taylor,* 47 N.C. App. 68, 266 S.E.2d 857 (1980), *aff'd in part, rev'd in part, modified in part,* 303 N.C. 256, 278 S.E.2d 501, *review allowed,* 301 N.C. 236, 283 S.E.2d 133. Hawaii has held that landlords may use self-help in addition to the legislative remedies provided in Chapter 666. *Gomes,* 26 Haw. at 665.

The legislature enacted the Residential Landlord-Tenant Code, Chapter 521 effective January 1, 1973, thus leaving Chapter 666 mainly applicable to commercial leases. Under § 521-68(a) a landlord's remedy for failure of a tenant to pay rent is provided:

> A landlord or his agent may, any time after rent is due, demand payment thereof and notify the tenant in writing that unless payment is made within a time mentioned in the notice, not less than five business days after receipt thereof, the rental agreement will be terminated. If the tenant remains in default, the landlord may thereafter bring a summary proceeding for possession of the dwelling unit or any other proper proceeding, action, or suit for possession.

Like Chapter 666, § 521-68 does not preclude self-help, but provides that the landlord "may" bring a summary proceeding or other action. The case of residential leases is not before us and we therefore express no opinion as to whether self-help is precluded in those situations. However, we do note differences which have arisen in other jurisdictions between the two types of leases.

Commercial leases appear to be under less stringent requirements in many states. In *Rodeway Inns of America v. Alpaugh,* 390 So. 2d 370 (Fla. App. 1980) the court noted that the Florida Residential Landlord/Tenant Act permits courts to override the terms and conditions of residential leases if they are deemed inequitable, but that there is no such control over business leases. The distinction between residential and commercial leases is that businessmen negotiating a commercial lease generally have more equal bargaining power than do residential tenants.

Our legislature has not enacted a commercial lease code, and we see no reason to depart from the rule in *Gomes*. Thus, we hold that a commercial landlord is not precluded as a matter of law from self-help eviction for non-payment of rent.

The public policy of this state and many other states have resulted in decisions condemning forceful re-entry. *Kong Kee*, 5 Haw. at 549; *Gomes*, 26 Haw. at 665; *Gulf Oil Corp. v. Smithey*, 426 S.W.2d 262 (Tx. Civ. App. 1968). Some have even held that a provision in a lease expressly permitting a forcible re-entry would be void as contrary to public policy set forth in statutes proscribing such action. *Spencer v. Commercial Co.*, 30 Wash. 520, 71 P. 53 (1902). While we need not decide this issue today, we note language in *Gomes* which stated that there are limitations to self-help.

Our ruling merely holds that whether there was a wrongful eviction and breach of the lease were questions of fact for the jury to decide in this case. It was error for the trial court to grant summary judgment as a matter of law, holding that defendant (World Square) was not legally entitled to exercise its rights under the lease to evict plaintiffs (The Depot) without first bringing a summary possession proceeding under Chapter 666 (HRS).[4]

Reversed and remanded for a new trial.

*Gary N. Hagerman (Gregory L. Lui-Kwan* with him on the briefs; *Lyons, Hagerman & Brandt* of counsel) for defendant-appellant.

*Lawrence W. Cohn (Cohn, Smith & Seiter* of counsel) for plaintiffs-appellees.

---

[4] We also feel that under the facts and circumstances of this case HRS Chapter 480 (unfair and deceptive trade practices) is not applicable and it was error for the trial court to assess treble damages.