106 P.3d 1109

**WAHBA, LLC, a Hawai'i limited liability company; Amgad B. Wahba, and Riyad B. Khoury; SNG, LLC, a Hawai'i limited liability company, Plaintiffs–Appellees**

**v.**

**USRP (DON), LLC; USRP (Jennifer), LLC; USRP (Steve), LLC; USRP (Sarah), LLC; USRP (Bob), LLC; USRP (Fred), LLC, all Texas limited liability companies, U.S. Restaurant Properties Operating L.P., a Delaware limited partnership; U.S. Restaurant Properties, Inc., a Maryland corporation, Defendants–Appellants**

**and**

**John Does 1–10, Jane Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10, Doe Limited Liability Companies 1–10, Doe Governmental Units 1–10, and Doe Entities 1–10, Defendants.**

**No. 24857.**

Supreme Court of Hawai'i.

Feb. 23, 2005.

---

■■■■■■■■

David J. Minkin and Philip J. Miyoshi (McCorriston Miller Mukai MacKinnon LLP), Honolulu, on the briefs, for defendants-appellants.

Mark S. Kawata, on the briefs, for plaintiffs-appellees.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Defendants–Appellants USRP (Don),[1] LLC; USRP (Jennifer), LLC; USRP (Steve), LLC; USRP (Sarah), LLC; USRP (Bob), LLC; USRP (Fred), LLC; U.S. Restaurant Properties Operating L.P.; and U.S. Restaurant Properties, Inc. (collectively, Defendants) appeal from (1) the March 21, 2002 civil contempt order (civil contempt order) resulting from a January 18, 2002 ruling of the first circuit court (the circuit court)[2] that Defendants violated the court's *ex parte* temporary restraining order issued on the evening of January 11, 2002 (*ex parte* TRO) and (2) the March 21, 2002 order denying reconsideration of the civil contempt order.

We hold that a temporary restraining order must be prohibitory in nature and comply with the requirements of Hawai'i Rules of Civil Procedure (HRCP) Rules 65(b) and (d). Because the circuit court issued a temporary restraining order that was mandatory in nature and did not strictly adhere to the requirements of HRCP Rules 65(b) and (d) (2002), we reverse the March 21, 2002 civil contempt order and the March 21, 2002 order denying reconsideration of the civil contempt order.

## I.

## A.

On March 10, 1999, Defendants, as lessors, entered into a master gasoline station/convenience store lease (the master lease) with BC Oil Ventures LLC (BC Oil). The master lease required BC Oil to obtain Defendants' consent prior to subletting any of the subject locations to another party for use as a gasoline station. On July 31, 2000, BC Oil filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (bankruptcy court).

On December 28, 2000, approximately five months after filing for bankruptcy, BC Oil and Plaintiffs–Appellees Wahba, LLC, Amgad B. Wahba, Riyad B. Khoury, and SNG, LLC (collectively, Plaintiffs) entered into subleases (retail facility leases) with BC Oil for eleven of the seventeen locations (leased premises) covered by the master lease between Defendants and BC Oil.

Sometime in May of 2001, Defendants and BC Oil entered into a stipulation for, among other things, BC Oil to file a motion with the bankruptcy court for an order determining that subleases entered into post-bankruptcy without the bankruptcy court's approval were null and void. On June 26, 2001, the bankruptcy court filed an "Order Approving Stipulation Between the Debtor, the Official Committee of Unsecured Creditors and USRP Resolving Disputes and Claims as Modified" which stated, among other things that:

> IT IS HEREBY FURTHER ORDERED that this Order approving the Stipulation further constitutes an order granting USRP the relief which has been agreed upon in the Stipulation, including . . . the *rejection* of [BC Oil's] non-residential real property leases for premises located in Hawaii effective as of April 16, 2001.

(Emphasis added.)

## B.

On or about August 11, 2001, Defendants filed eleven summary possession cases in the

---

1. The record on appeal does not reflect why the parties are designated in this manner.

2. The Honorable Gary W.B. Chang presided over this matter.

district court of the first circuit (district court) to regain possession of the leased premises located in Hawai'i.[3] These eleven cases were consolidated into one summary possession action (summary possession action) in the district court under Civil No. 1RC01–5020. Plaintiffs filed a motion to compel discovery and a motion to continue in the district court. Hearings for both motions and trial in the summary possession action were scheduled for January 11, 2002.

### C.

On November 28, 2001, Plaintiffs filed a complaint in the circuit court under Civil No. 01–1–003395. In this complaint, Plaintiffs prayed for, among other things, "a temporary restraining order, and preliminary and permanent injunction enjoining and restraining Defendants from terminating the franchise or the retail facility leases of Plaintiffs" and "a stay of the summary possession action pending resolution" of the circuit court case.

On December 21, 2001, in a further attempt to enjoin Defendants from proceeding with the summary possession action in the district court, Plaintiffs filed an amended complaint[4] in Civil No. 01–1–003395. Plaintiffs prayed for, among other things, "an order enjoining or restraining [Defendants] from proceeding with the summary possession [action.]"[5]

### D.

On December 26, 2001, Plaintiffs moved in the circuit court for a preliminary injunction that would enjoin (1) Defendants from interfering with the operation of Plaintiffs' service stations and (2) the summary possession action in district court. The hearing for this motion was scheduled for January 9, 2002.[6]

On January 2, 2002, Plaintiffs moved in the circuit court for a temporary restraining order or, in the alternative, for a preliminary and/or permanent injunction, that would enjoin (1) Defendants from interfering with the operation of Plaintiffs' service stations and (2) the summary possession action in district court. The hearing on this motion was scheduled for January 9, 2002.

On January 11, 2002, the district court granted Plaintiffs' motion to continue and set a hearing on the motion to compel discovery and a pretrial conference for Monday, January 14, 2002. After the motion to continue was granted, Defendants announced to the district court its intention to use self-help, in that, Defendants intended to remove gasoline distribution equipment, including pumps and electronic cash registers from the service station locations.

Late in the afternoon of January 11, 2002, Plaintiffs moved *ex parte* for a temporary restraining order[7] (*ex parte* TRO motion) before the circuit court to enjoin Defendants from removing cash registers, electronic

---

3. Defendants sought to retake possession of the following eleven service stations at the following locations: (1) 3001 E. Manoa Road; (2) 2314 North School Street; (3) 2024 Kalakaua Avenue; (4) 98–109 Kamehameha Highway; (5) 150 North Kamehameha Highway; (6) 46–004 Kamehameha Highway; (7) 94–914 Fort Weaver Road; (8) 92–577 Makakilo Drive; (9) 87–1942 Farrington Highway; (10) 1701 Dillingham Boulevard; and (11) 215 South Vineyard Street.

4. In the amended complaint, Plaintiffs asserted eleven counts as follows: (1) alleged wrongful termination of franchises in violation of Hawai'i Revised Statutes (HRS) § 486H–2 and HRS § 486H–3 (1993 and Supp.1998); (2) specific performance with respect to Plaintiffs' retail facility leases; (3) declaratory relief regarding the rights and responsibilities of all parties under HRS chapter 486H; (4) declaratory relief regarding the validity and enforceability of the retail facility leases; (5) money damages arising out of violations of HRS chapter 486H; (6) an injunc-

tion pursuant to 15 U.S.C § 2802; (7) declaratory relief setting forth the rights and obligations of all parties pursuant to 15 U.S.C. § 2801 et seq.; (8) money damages pursuant to 15 U.S.C. § 2801 et seq.; (9) unfair and/or deceptive acts or trade practices in violation of HRS chapter 486, entitling Plaintiffs to treble damages; (10) bad faith, entitling Plaintiffs to general damages; and (11) willful, wanton or malicious actions, or actions in disregard of Plaintiffs' substantial rights, entitling Plaintiffs to punitive damages.

5. The record does not reflect whether Defendants answered Plaintiff's complaint, or whether Defendants asserted any cross-claims or third-party complaints.

6. The record on appeal does not indicate that the circuit court ever ruled on this motion.

7. This *ex parte* motion for TRO was submitted on January 11, 2002, and filed on January 14, 2002.

equipment, and gasoline distribution equipment from Plaintiffs' service stations. On the same day, at about 7:15 to 7:30 p.m., Defendants' counsel,[8] Plaintiffs' counsel,[9] and the circuit court participated in a three-way telephone conference. The circuit court indicated that it desired that Defendants' counsel contact his clients to request Defendants to halt its self-help efforts voluntarily. Defendants' counsel called Plaintiffs' counsel later and advised Plaintiffs' counsel that he was unable to contact Defendants.

On January 11, 2002, the circuit court granted Plaintiffs' *ex parte* TRO motion (*ex parte* TRO). The *ex parte* TRO

> enjoin[ed] and restrain[ed] Defendants and each of them, and their agents, employees, attorneys, consultants, successors or assigns, and all other persons or entities, from and against interfering with the operations of Plaintiffs' service stations located at the below-listed locations, pending the Court's decision on a Motion for Temporary Restraining Order or Preliminary Injunction, as follows:
>
> 1. Enjoining and restraining the removal of cash registers, electronic equipment, or gasoline distributing equipment (including pumps, piping and storage tanks) at the following service stations:
>
> . . . .
>
> 2. All persons shall cease and desist from such removal or disabling of equipment forthwith.
>
> 3. To the extent that any such equipment has been removed or disabled, the persons responsible for the removal, including Defendants, *shall immediately reinstall or restore such equipment.*

8. David J. Minkin served as Defendants' trial counsel.

9. Mark S. Kawata served as Plaintiffs' trial counsel.

10. However, Defendants claim that the document given to Jack Jennings (USRP employee) did not contain a court order signed by a judge.

11. The civil contempt order stated, in pertinent part, the following:

> 13. The [Defendants] are required to reinstall all of the equipment that was removed by Wednesday, January 23, 2002.

(Emphasis added.) According to Plaintiffs, thereafter, copies of the signed *ex parte* TRO were faxed to all of the service stations.[10] On January 14, 2002, Plaintiffs' *ex parte* TRO motion, with a declaration of Plaintiffs' counsel, a memorandum in support of the motion, and the *ex parte* TRO attached were filed.

On January 17, 2002, based on the alleged failure of Defendants to comply with the *ex parte* TRO, the circuit court entered an order for Defendants to show cause as to why an order regarding contempt and sanctions should not be issued for failure to comply with the *ex parte* TRO. On January 18, 2002, the parties appeared before the circuit court for the hearing on the order to show cause, and the circuit court found that the *ex parte* TRO was violated. Consequently, the circuit court ruled (civil contempt ruling) that Defendants reinstall and/or restore the personal property that had been removed from certain service stations by Wednesday, January 23, 2002, or be subject to a fine of $1,000.00 per day, per gasoline service station, for every day that the personal property was not reinstalled or restored after January 23, 2002. The circuit court also ordered that Defendants pay Plaintiffs' attorneys' fees associated with Plaintiffs' January 11, 2002 *ex parte* TRO motion and order to show cause hearing.[11]

On January 23, 2002, Defendants moved for reconsideration of the civil contempt ruling. The court denied this motion. On January 24, 2002, Defendants filed a notice of appeal from (1) the court's oral civil contempt ruling that Defendants had violated the *ex parte* TRO, and (2) the court's oral order denying Defendants' motion for reconsideration.[12]

> 14. For every day that the equipment is not operational after Wednesday, January 23, 2002, the [Defendants] will be fined $1,000.00 per day, per station, as a civil penalty.
>
> 15. Additionally, [Defendants] are required to pay the [Plaintiffs'] attorneys' fees incurred in securing this remedy on the [o]rder to [s]how [c]ause and [c]ontempt.

12. Defendants prematurely filed their notice of appeal on January 24, 2002, prior to the court's entry of the March 21, 2002 order of civil contempt and the order denying reconsideration. However, pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(2), "[i]n any case in

On March 21, 2002, the court entered the written civil contempt order that reflected its earlier civil contempt ruling. The court also entered a written order denying Defendant's motion for reconsideration of the civil contempt order. The order denying the motion for reconsideration modified the civil contempt ruling and order by extending Defendants' deadline to return the personal property to Plaintiffs to January 24, 2002, and substituting a sanction against Defendants for $5,000.00 payable to Plaintiffs in place of the prior award of attorney's fees.[13]

## II.

On appeal, Defendants argue that the circuit court's January 18, 2002 civil contempt ruling was improper and should be reversed inasmuch as the *ex parte* TRO was substantively and procedurally defective. First, Defendants contend that the *ex parte* TRO was substantively defective because (1) it inappropriately required Defendants to engage in affirmative conduct, *i.e.*, requiring Defendants to return property over which it asserted ownership, and (2) Plaintiffs failed to meet the requisite showing of irreparable harm and likelihood of success on the merits necessary to sustain the issuance of a TRO. Second, Defendants maintain that the *ex parte* TRO was procedurally defective because it failed (1) to indicate the hour of issuance, (2) to define the injury and state why such injury was irreparable, (3) to state why the *ex parte* TRO was granted without full and complete notice, and (4) to state the reasons for its issuance.

In response, Plaintiffs first argue that the *ex parte* TRO was substantively proper under existing law because (1) the "[circuit] court, within its discretion, [has] the means to order relief that may require affirmative acts on the part of a litigant"; (2) "the [c]ircuit [c]ourt's finding of contempt and the sanctions were permissible exercises of discretion, either under the [o]rder of [c]ontempt or the [c]ircuit [c]ourt's inherent powers"; and (3) the "[c]ircuit [c]ourt did not abuse its discretion" in finding that Plaintiffs demonstrated irreparable harm, *i.e.* the "destruction of the businesses" by the removal of the gas station property. Second, Plaintiffs urge that the *ex parte* TRO was not procedurally defective because (1) the *ex parte* TRO and the attached supporting documents satisfy the requirements of HRCP Rule 65, (2) the authorities cited by Defendants are not persuasive or applicable, and (3) notice was given to counsel for Defendants. Third, Plaintiffs assert that no new argument or evidence was offered by Defendants which would have given the circuit

which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal." Therefore, the effective date of Defendants' notice of appeal was March 21, 2002.

**13.** The order denying the motion for reconsideration that modified the civil contempt ruling and the civil contempt order, stated in relevant part as follows:

a. USRP's *deadline to reinstall and/or restore the equipment*, originally scheduled for January 23, 2002, is *hereby extended until midnight January 24, 2002.*

b. If USRP fails to reinstall and/or restore the equipment by midnight January 24, 2002, then a civil penalty of $1,000.00 a day per station that has not been restored will be imposed.

c. As soon as the [d]istrict [c]ourt matter is ruled upon by the [d]istrict [c]ourt judge, if the judge grants summary possession to USRP, USRP will be immediately thereupon free of further obligations imposed thereafter by the restraining order. USRP shall remain liable for any accrued monetary sanctions and penalties.

d. The *[c]ourt agrees that the attorney's fees to Plaintiffs initially imposed pursuant to the Contempt Order cannot be awarded. However, the [c]ourt would, in lieu of the award of attorney's fees, impose a monetary sanction for contempt in the amount of $5,000.00, to be payable to Plaintiffs* by Monday, January 18, 2002.

e. Plaintiffs' counsel shall inform Plaintiffs that they are not to destroy or otherwise harm any personal property not belonging to them, and which is located at the subject service stations.

f. In response to USRP's inquiry, the [c]ourt determined that the issuance of the January 11, 2002 Temporary Restraining Order occurred at 8:00 P.M.

g. In response to Plaintiffs' request, the Temporary Restraining Order is hereby extended for ten days, from January 21, 2002 until January 31, 2002. The effectiveness of the Temporary Restraining Order shall be nunc pro tunc to January 21, 2002.

(Emphases added.)

court the basis to reconsider its civil contempt ruling.

We review civil contempt orders under the abuse of discretion standard. *See LeMay v. Leander*, 92 Hawai'i 614, 620, 994 P.2d 546, 552 (2000). " 'An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Id.* (quoting *State v. Dudoit*, 90 Hawai'i 262, 265, 978 P.2d 700, 703 (1999)).

### III.

We must agree with Defendants' two basic contentions. First, Defendants assert that the *ex parte* TRO was substantively defective and that it exceeded the proper scope of a TRO by requiring that Defendants reinstall and/or restore equipment that had been previously removed. Defendants base this argument on the premise that the *ex parte* TRO is a species of the prohibitory form of injunction.

### A.

"A [TRO] is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *Whitman v. Hawaiian Tug & Barge Corp.*, 27 F.Supp.2d 1225, 1228 (D.Haw.1998). *See also Bronco Wine Co. v. U.S. Dept. of Treasury*, 997 F.Supp. 1309, 1313 (E.D.Cal.1996) (A TRO is designed "to preserve the status quo pending a full hearing on a preliminary injunction."); *Black's Law Dictionary* 1464 (6th ed.1990) (defining a TRO as an "[o]rder which is issued to maintain status quo pending a hearing on an application for an injunction" (citation omitted)); *Black's Law Dictionary* 1181 (5th ed.1979) (stating that a restraining order forbids "the defendant to do the threatened act until a hearing on the [injunction] application can be had, ... and it does no more than restrain the proceeding until such determination").

In essence, a TRO is a prohibitory form of injunction. In a prohibitory injunction, the matter complained of is a consequence of present conduct and the injunction simply orders a defendant to refrain from engaging in the designated acts. *See Arkansas Dep't of Human Servs. v. Hudson*, 338 Ark. 442, 994 S.W.2d 488, 489 (1999) (An injunction is "prohibitory when it commands [a person] to refrain from doing a specific act."); *Black's Law Dictionary* at 785 (6th ed.1990) (defining "prohibitory injunction" as "[a]n order of a court in the form of a judgment which directs one not to do a certain thing"). In other words, a prohibitory injunction requires that a party cease certain conduct in order to preserve the status quo.

In contrast, a mandatory injunction requires affirmative action concerning the undoing or doing of an act. *See Legal Aid Soc'y of Hawaii v. Legal Servs. Corp.*, 961 F.Supp. 1402, 1408 n. 3 (D.Haw.1997) ("A mandatory injunction commands performance of certain acts whereas a prohibitory injunction prohibits the performance of certain acts."). Mandatory preliminary relief which goes well beyond the status quo is "particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir.1980). *See also Legal Aid Soc'y*, 961 F.Supp. at 1408 n. 3 ("The severity of a mandatory injunction makes it a disfavored option which courts should deny unless the facts and law clearly favor the injured party." (Internal quotation marks and citation omitted.)). However, "unless prohibited ... by some constitutional or statutory provision, a court of equity can, and in a proper case will, award mandatory as well as prohibitive injunctive relief." *Viestenz v. Arthur Township*, 78 N.D. 1029, 54 N.W.2d 572, 574 (1952). *See also Towery v. Garber*, 196 Okla. 78, 162 P.2d 878, 880 (1945) (holding that an injunction preventive in some respects and mandatory in others may be granted where the facts warrant such granting).

In this case, the court issued an *ex parte* TRO. The office of a TRO, as discussed, is generally limited to maintaining the status quo. By requiring that Defendants reinstall and/or restore the equipment that had been removed, the *ex parte* TRO compelled Defendants to engage in affirmative acts and do

more than refrain from removing the equipment, thus exceeding the normal scope of a TRO.

In response, Plaintiffs essentially argue that the court has "wide discretion to fashion appropriate injunctive relief" that includes issuance of a mandatory injunction in the form of a TRO. Plaintiffs rely on a number of cases [14] for this proposition. First, Plaintiffs cite to *Legal Aid Soc'y* for the proposition that although mandatory relief is not favored, it can still be awarded. Second, Plaintiffs refer to *Whitman*, acknowledging that a TRO "preserves the status quo, but that [this case] does not address the proposition that mandatory relief cannot be granted in a TRO." Third, Plaintiffs rely on *Kleinjans v. Lombardi*, 52 Haw. 427, 478 P.2d 320 (1970), for a "more liberal standard for the issuance of injunctive relief." [15] Fourth, Plaintiffs argue that *Penn v. Transp. Lease Hawai'i, Ltd.*, 2 Haw.App. 272, 630 P.2d 646 (1981) "takes *Kleinjans* a step further, and specifically holds that mandatory relief can be granted." Fifth, Plaintiffs assert that "[c]ourts have long held that a[TRO] can involve mandatory relief." They rely on *Toledo A.A. & N.M. Ry. Co. v. Pennsylvania Co.*, 54 F. 730, 741 (N.D.Ohio 1893), which states:

> Generally[, preserving the status quo] can be accomplished by an injunction prohibitory in form, but it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable

injury upon complainant.... In such a case courts of equity issue mandatory writs before the case is heard on its merits.

Finally, Plaintiffs refer to *Kahuku Agricultural Co. (Hawaii), Inc. v. P.R. Cassiday, Inc.*, 68 Haw. 625, 725 P.2d 1186 (1986), as an example where a mandatory TRO was issued requiring a landlord to restore a tenant to possession of the property.

Plaintiffs' reliance on the above cited cases for the principle that the mandatory form of an injunction may issue by way of a TRO is misplaced. First, *Legal Aid Soc'y*, 961 F.Supp. at 1407, *Whitman*,[16] 27 F.Supp.2d at 1227, and *Penn*,[17] 2 Haw.App. at 273–74, 630 P.2d at 648, concern the issuance of injunctive relief by way of a *preliminary injunction, not* through a TRO. (Emphases added.) Moreover, Plaintiffs acknowledge and this court recognizes that a mandatory injunction is disfavored by courts. *See* discussion *supra; Legal Aid Soc'y*, 961 F.Supp. at 1408 n. 3.

Second, *Kleinjans* addressed policy considerations justifying the use of an injunction that supports a court's use of its discretion in fashioning injunctive relief. 52 Haw. at 431–32, 478 P.2d at 323–24. However, *Kleinjans* does not address the issue of whether a mandatory injunction, requiring a party to engage in an affirmative act, is a proper use of a TRO.

Third, Plaintiffs' reliance on *Toledo* is unpersuasive because the Ohio circuit court in

14. In addition to the cases discussed *infra*, Plaintiffs cite to *Watson v. Brown*, 67 Haw. 252, 686 P.2d 12 (1984), as a case that was relied on by both Plaintiffs and Defendants in the "Motion to Dissolve and Order to Show Cause." Plaintiffs argue that *Watson* does not authorize removal of equipment, but fail to cite to any specific language in *Watson* for this proposition.

15. Plaintiffs quote to a footnote in *Kleinjans* that comments on the development of injunctive remedies as follows:

> It should be recognized that the limitations on the injunctive remedy are fundamentally questions of policy. Thus, Pomeroy suggests: 'Whenever a right exists or is created by contract, by the ownership of property or otherwise, cognizable by law, a violation of that right will be prohibited, unless there are other considerations of policy or expediency which forbid a resort of this prohibitive remedy.' 4 Pomeroy, [*Equity Jurisprudence*] § 1338, [ (5th ed.1941) ]. Many of the historical limitations on injunctive relief were based upon considerations of deference to a competing judicial system and deserve to be reevaluated in light of the modern merger of law and equity. *See* Note[, Developments in the Law–Injunctions, 78 Harv. L.Rev. 994,] 996 [ (1965) ].

> 52 Haw. at 431 n. 2, 478 P.2d at 323 n. 2.

16. The plaintiff in *Whitman* filed a motion for TRO *and* preliminary injunction. 27 F.Supp.2d at 1227 (emphasis added).

17. The plaintiff in *Penn* filed a motion for preliminary injunction and, ultimately, appealed from a permanent injunction issued by the trial court. 2 Haw.App. at 273–74, 630 P.2d at 648

474

*Toledo* was concerned with whether an *ex parte* TRO should be continued until the final decision of the case. 54 F. at 731. Thus, the hearing before the *Toledo* court was akin to a hearing on a motion for permanent injunction.

Finally, Plaintiffs' reliance on *Kahuku Agricultural Co.* is inapplicable as this court did not discuss the issue of whether a TRO could be mandatory in nature. Rather, the *Kahuku Agricultural Co.* court was concerned with the award of attorney's fees and whether a lessee, who had obtained a declaration that he had not violated the lease agreement and an order permanently enjoining the lessor from locking the lessee out of the premises, was a "prevailing party." 68 Haw. at 627–28, 725 P.2d at 1188.

■ We believe the better view is that the mandatory form of injunction may issue by way of a *preliminary injunction*, but *not* via a TRO. "A [TRO] is an extraordinary remedy ... that differs from a preliminary injunction in terms of duration, procedural requirements, and appealability." 13 J. McLaughlin, *Moore's Federal Practice* § 65.31 (3d ed.2004). *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, Local No. 70,* 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 ("*Ex parte* [TROs] are no doubt necessary in certain circumstances, but ... they should be restricted to their underlying purpose of preserving the status quo and preventing irreparable harm just so long as necessary to hold a hearing, and no longer." (Citation omitted.)). For example, in this situation, a TRO could have required Defendants to cease or to stop removing all the equipment from Plaintiffs' service stations. A separate petition for a mandatory injunction, requiring that Defendants return and/or re-install the equipment could then have been filed to be scheduled for a hearing or filed and heard at the scheduled hearing on January 14, 2002.[18]

■ We need not address Defendants' alternative argument that, assuming an affirmative mandate is permitted by way of a TRO, requiring the return of personal property where ownership is in dispute is not proper, because we, *supra*, determine that the *ex parte* TRO issued in this case exceeded its proper scope.[19] For the same reason, there is no need to discuss at length whether there was an adequate showing of irreparable harm and likelihood of success on the merits to sustain the TRO.[20]

### B.

■ In any event, as to Defendants' second contention that the *ex parte* TRO was "procedurally" defective, Federal Rules of Civil Procedure (FRCP) Rule 65 "assure[s] the restrained party some measure of protection in lieu of receiving formal notice and the opportunity to participate in a hearing." 11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2951, at 254. In this regard, Hawai'i Rules of Civil Procedure (HRCP) Rules 65(b) and (d) govern the issuance of TROs in this jurisdiction. HRCP Rule 65(b) provides, in relevant part, that

18. At the time the *ex parte* TRO was issued, Defendants had a pending consolidated summary possession action against Plaintiffs before the district court. We do not address the appropriateness of Defendants' actions, *i.e.*, the self-help, which led to the Plaintiffs' *ex parte* TRO motion.

19. Defendants rely on *Lipinski v. Lipinski*, 261 Wis. 327, 52 N.W.2d 922, 923 (1952) (recognizing that "where title or the right of possession is in dispute between two parties, one of whom is in actual possession under a claim of color of right, injunction will not, as a rule, lie to transfer possession to the other party") and *Moss Indus., Inc. v. Irving Metals Co.*, 140 N.J. Eq. 484, 55 A.2d 30, 32 (N.J.Ch.1947) (stating that it is "generally ... improper to award a preliminary order [which] compel[s] the transfer of property from one litigant especially where ... the legal title is in dispute and the party in possession asserts ownership") to support this argument.

20. "A motion for temporary injunctive relief requires determination [of] whether, and if so what, action is appropriate to create or preserve a state of affairs such that the court will be able to render a meaningful decision on the merits." *Life of the Land v. Ariyoshi*, 59 Haw. 156, 158, 577 P.2d 1116, 1118 (1978). The threefold test for temporary injunctive relief asks whether (1) the plaintiff is likely to prevail on the merits, (2) the balance of irreparable damage favors the issuance of a temporary injunction, and (3) the public interest supports granting the injunction. *Id.*

[a TRO] may be granted without written or oral notice to the adverse party or the party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. *Every [TRO] granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice;* and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes[.]

(Emphasis added.) HRCP Rule 65(d) requires in pertinent part that "every restraining order shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained[.]"

▪ Similarly, FRCP Rules 65(b) and (d) (2002) govern the issuance of TROs in the federal courts. FRCP Rules 65(b) and (d) are identical in language to HRCP Rules 65(b) and (d).[21] Because HRCP Rules 65(b) and (d) and FRCP Rules 65(b) and (d) are textually identical, federal court interpretations of FRCP Rule 65(b) are persuasive. *See Gold v. Harrison,* 88 Hawai'i 94, 105, 962 P.2d 353, 364 (1998) ("Where we have pat-

terned a rule of procedure after an equivalent rule within the FRCP, interpretations of the rule by the federal courts are deemed to be highly persuasive in the reasoning of this court." (Internal quotation marks and citation omitted.)). Under federal case law, an *ex parte* TRO "runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted [to] both sides of a dispute." *Granny Goose Foods, Inc.,* 415 U.S. at 439, 94 S.Ct. 1113. Thus, the requirements of FRCP Rule 65 "should [be] scrupulously observe[d]." *Austin v. Altman,* 332 F.2d 273, 275 (2d Cir.1964). *See e.g., Granny Goose Foods, Inc.,* 415 U.S. at 439–40, 94 S.Ct. 1113 (holding that an *ex parte* TRO issued by a state court is effective even after removal to federal court, "but in no event does the [*ex parte* TRO] remain in force longer than the time limitations imposed by [FRCP] Rule 65(b)").

▪ Hence, the requirements of FRCP Rule 65(d) "are mandatory and must be observed in every instance." *Alberti v. Cruise,* 383 F.2d 268, 272 (4th Cir.1967). Because a restraining order is "an extraordinary writ, subject to contempt for failure to comply," it "must be set out in specific terms." *Brumby Metals, Inc. v. Bargen,* 275 F.2d 46, 50 (7th Cir.1960). For example, the requirement of FRCP Rule 65(d) that "every restraining order shall set forth the reasons for its issuance" helps ensure "due care" by the court and "aids the appellate court in understanding the grounds or basis for the trial court's decision." *Knox v. Salinas,* 193 F.3d 123, 129 (2d Cir.1999); *see id.* (concluding that the injunction did not comply with Rule 65(d)

---

21. FRCP Rule 65(b) states that

[a TRO] may be granted without written or oral notice to the adverse party or the party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. *Every [TRO] granted without notice shall be indorsed with the date and hour of*

*issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice;* and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes[.] (Emphasis added.)

FRCP Rule 65(d), like HRCP Rule 65(d), provides in pertinent part that "every restraining order shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained[.]"

because the "court's statements did not adequately reveal the basis of the court's decision").

### IV.

Here, the *ex parte* TRO described the conduct that Defendants were enjoined from engaging in,[22] but failed to state the factual or legal basis that would support the enjoinment, *i.e.*, reasons for its issuance, and, as such, was improper. *See Blue v. Hogan*, 553 F.2d 960, 962 (5th Cir.1977) (determining that injunction did not comply with FRCP Rule 65(d) because it did not state the reasons for its issuance); *Alberti*, 383 F.2d at 272 (concluding that there was insufficient compliance with FRCP Rule 65(d) because the court "stated no valid reason for the issuance of the injunction"); *but see Ross–Whitney Corp. v. Smith Kline & French Labs.*, 207 F.2d 190, 198 (9th Cir.1953) (holding that preliminary injunction satisfied FRCP Rule 65(d) because it set forth as its reason for issuance "that otherwise 'plaintiff will suffer irreparable loss, injury (and) damage' ").

Additionally, the *ex parte* TRO failed to comply with the mandate of HRCP Rule 65(b) that a TRO "shall define the injury and state why it is irreparable and why the order was granted without notice." The *ex parte* TRO in this case failed to indicate Plaintiffs' alleged injury or why that alleged injury was deemed irreparable. It merely described the conduct from which Defendants were enjoined and, thus, did not comply with HRCP Rule 65(b).[23] *See e.g., Blue*, 553 F.2d at 962 ("Failure of a district court to comply with FRCP 65(d) requires reversal of the injunctive order.").

Also, Plaintiffs maintain that motions for TROs generally involve an emergency, therefore, courts are mindful of the speed with which the application is assembled and will place a reasonable construction on the application and supporting documents, taking into consideration the fact that the pleadings were prepared in haste. In this instance, Plaintiffs note that the *ex parte* TRO motion was initiated after-hours.

However, we cannot agree with Plaintiffs. Motions for TRO necessarily concern "emergency" circumstances from the viewpoint of the applicant. Nevertheless, the fact that an "emergency" situation is involved does not excuse strict adherence to the requirements of HRCP Rules 65(b) and (d), because a TRO is such an extraordinary remedy. *See e.g., Alberti*, 383 F.2d at 272 (stating that the requirements of Rule 65(d) "are mandatory and must be observed in every instance"); *Brumby Metals*, 275 F.2d at 50 (a restraining order is an extraordinary writ, "subject to contempt for failure to comply, and thus must be set out in specific terms"). Therefore, these rules are not mere technical requirements, but must be adhered to scrupulously. The *ex parte* TRO accordingly was procedurally defective and, thus, void. *See Intermountain Rural Elec. Ass'n., Inc. v. District Court*, 160 Colo. 128, 414 P.2d 911, 913–14 (1966) (explaining that any deficiency or failure to comply with the requirements of Colorado Rules of Civil Procedure Rules 65(b), (c) and (d) was " 'sufficient to render the [restraining] order a nullity' " (quoting *Renner v. Williams*, 140 Colo. 432, 344 P.2d 966, 967 (1959))).

### V.

Because the *ex parte* TRO was void, Defendants had no duty to comply with it, and they could not be adjudged in contempt for refusing to obey the *ex parte* TRO. Consequently, the January 18, 2002 civil contempt ruling, the March 21, 2002 civil contempt order, and the March 21, 2002 order denying motion for reconsideration are reversed.

---

**22.** As mentioned before, the *ex parte* TRO ordered (1) the injunction and restraint of the removal of cash registers, electronic equipment, or gasoline distribution equipment at the listed service station locations, (2) all persons to cease and desist any such removal or disabling of equipment, and (3) the immediate reinstallation or restoration of any such equipment to the extent that the equipment had been removed or disabled.

**23.** The court also determined, at a later hearing, the time of the *ex parte* TRO's issuance was 8:00 p.m., but that time was not indorsed on the ex parte TRO as required under HRCP 65(b).